# FRY *v.* BENNETT.

The rule is well settled, that if a general verdict is rendered, upon several counts in a complaint, some of which are good and others state no cause of action, the judgment entered upon the verdict is erroneous.

Where counts, in a complaint for libels, set forth various articles which are alleged to have been falsely and maliciously published by the defendant, in a public newspaper, and which articles reflect upon the plaintiff and his business, and his management of it, and tend to injure him in his business, and are therefore libellous, if false and malicious, such counts are good; and the objection that the verdict is in part founded upon counts which do not state a cause of action will not lie.

In an action for libel, proof of express malice on the part of the defendant, in the particular publication counted upon, is competent for the purpose of enhancing the damages; whether the publication comes within the class of privileged communications, or not.

Within the rule which allows proof of the repetition of the libellous charge, to show malice beyond that implied by the original publication, any act or language of the defendant tending to prove malice on his part, in regard to the particular libel which is the subject of the action may be proved.

Testimony tending to show that the publications complained of were the result of a malicious feeling entertained by the defendant towards the plaintiff, and that the libellous articles were published to gratify this malicious feeling, and to accomplish the defendant's threatened purpose "to finish" the plaintiff, is of this nature, and therefore admissible.

A party has no right to object, when a cause is reached in its order on the calendar, at the circuit, that the trial should not be had before the judge *who is presiding, for the reason that he had tried the cause on a former* occasion.

The question as to which party shall open and close the case, *it seems*, should be regarded as one of practice, to be regulated by the discretion of the judge, and his decision upon it is not a subject of exception.

If the court had the power to review a decision upon a matter which is the subject of discretion, it would not be disposed to reverse a judgment for an error in the exercise of such discretion.

In an action for the publication of a libel, in a newspaper, it is competent for the plaintiff to prove the extent of the circulation of the paper, at the time the libel was published.

The editor and proprietor of a newspaper is presumed to have knowledge of its contents.

Where the alleged libel is published of and concerning the plaintiff as the

manager of an opera in this state, it is unnecessary for the plaintiff to aver or prove that he had taken out a license to give operatic representations under the acts of the legislature, of 1829 and 1839; the legal presumption being that he has not violated those statutes.

If the defendant wishes to avail himself of the defense that the plaintiff had not the requisite qualification under the statute, he should allege it in his answer, and the burden of proving the want of qualification is upon him.

APPEAL from the Superior Court of the city of New York. The action was for libel. The case has been twice tried, and on both occasions before Chief Justice OAKLEY, in the Superior Court. The complaint set forth twelve causes of action, being so many separate libels, as claimed. One was demurred to and abandoned. To each of the others the answer set up a justification and mitigating circumstances. Special damages were not charged or claimed. The libels are alleged to have been published of the plaintiff as manager of the Italian opera, represented at the Astor place opera house during the season of 1848. The publications were made in the New York Herald, of which the defendant was the proprietor and editor. On the first trial the plaintiff recovered a verdict of $10,000. (See 4 Duer, 251, S. C.) The defendant moved for a new trial, which was granted. The second trial was before a jury, in May, 1856. At the trial the defendant insisted, first, that the articles were not libellous; secondly, that they were privileged criticisms upon public performances; thirdly, that they were true in fact; and, fourthly, that if the jury should not think them all true, they were nevertheless published under such mitigating circumstances as to take from the plaintiff the right to more than nominal damages. During the course of the trial many exceptions were taken to rulings of the court, which are noticed in the opinion of ROSEKRANS, J. The second trial resulted in a verdict for the plaintiff, for $6000, on which judgment was entered, at a special term, in April, 1857; which was affirmed at a general term, in July, 1858. See *S. C.* (3 Bosw. 200,) for the facts, and for the points raised and decided in the Superior Court.

*David Dudley Field,* for the appellant.

*F. R. Sherman,* for the respondent.

ROSEKRANS, J.   The rule is well settled that, if a general verdict is rendered, upon several counts in a complaint, some of which are good, and others state no cause of action, the judgment entered upon the verdict is erroneous.   It is claimed by the defendant that within this rule, the judgment in this case should be reversed, for the reason that the 7th, 8th, 9th, 10th and 11th counts in the complaint do not state a cause of action.   The meaning of the articles set out in the several counts is fully explained by the introductory matter and innuendoes stated in the complaint, and is to be regarded as their true meaning.   The 7th count is upon an article which contains a charge of a design on the part of the plaintiff to cheat and defraud the subscribers to the opera under the plaintiff's management, of the subscriptions, by a fraudulent discontinuance of operatic representations and performances at New York, as he had previously done at Philadelphia.   The article set out in the 8th count contains a charge that the plaintiff had become bankrupt and insolvent at Philadelphia, and that he was about to become bankrupt and insolvent at New York.   The article which is set out in the 9th count charges that the plaintiff had violated his business engagements and obligations with the subscribers to the opera, and had misapplied the money subscribed for that purpose, to the purchase of a panorama, which he intended to substitute in the place of operatic representations, in violation of his agreement.   The 10th count is upon an article alleged to have been published by the defendant, charging the plaintiff with having given a fancy ball at the opera house, at which the gamblers of the city were permitted to appear and mix familiarly with the characters, and that the opera was patronized, particularly in the parquette and private boxes, by gamblers.   The 11th count is upon an article alleged to have

been published by the defendant to the effect that, but for the patronage which gamblers gave the opera house, the plaintiff could not sustain himself for a week; that the fancy ball alleged to have been given by the plaintiff would have failed, but for the patronage of gamblers; and that the grand dress ball which, as was stated, the plaintiff was about to give, would fall through but for the patronage of such gamblers. These several articles are alleged to have been falsely and maliciously published by the defendant, and as they reflect upon the plaintiff and his business, and his management of it, and tend to injure the plaintiff in his business, if they are false and malicous statements, they are libellous. The counts referred to are therefore good, and the objection that the verdict was in part founded upon counts which did not state a cause of action, is not well taken.

The objection to testimony offered by the plaintiff to show express malice on the part of the defendant in the *particular publications counted upon*, was also properly overruled. It was wholly immaterial whether the publications came within the class of privileged communications, or not. In either case the testimony offered was admissible. If the publications were in the class of privileged communications, the plaintiff could not recover without extrinsic proof of malice, and if they were not privileged, and malice was implied in law, and therefore proof of express malice not within the issue and unnecessary, still as the proof offered tended to show express malice in reference to *these particular publications*, it was competent for the purpose of enhancing the damages. The cases cited by the defendant's counsel, to sustain the objection, do not state any different rule. Nor am I aware of any principle or decision upon which the objection can be sustained. In *Howard* v. *Sexton*, (4 Coms. 157,) which was an action of slander for charging the plaintiff with perjury, words spoken on a different occasion from that in which the slander was uttered, and of a different import, and not having any reference to the slanderous charge, were sought to

be proved, to enhance the damages. Gardiner, J. said: "It has sometimes been argued that proof of this character shows *general* malice upon the part of the defendant, which may properly enhance the damages against him. So would evidence that he had set fire to the house of the plaintiff, or committed a battery upon his person, furnish stronger proof of general malice than mere words, however opprobrious. The principle does not stop with mere words, but extends to the whole conduct of the defendant. Some of the adjudged cases," he says, "certainly seem to go this length, and if the proposition we are considering is sound, they were rightly decided. But the modern, and I think the better doctrine is, that the action for slander was not designed to punish the defendant for general ill will to his neighbor, but to afford the plaintiff redress for a specific injury. To constitute that injury, malice must be proved; not mere general ill will, but malice in the special case set forth in the pleadings, to be inferred from it, and the *attending circumstances*. The plaintiff may show a repetition of the charge, for which the action is brought, but not a different slander, for any purpose." Within the rule which allows proof of the repetition of the slanderous charge, to show malice beyond that implied by the original uttering of the words, any act or language of the defendant tending to prove malice on the part of the defendant, in regard to the particular slander or libel, which is the subject of the action, may be proved. The testimony offered by the plaintiff was of this nature. It tended to show that the publications complained of were the result of a malicious feeling entertained by the defendant towards the plaintiff, and that the libellous articles were published to gratify this malicious feeling; that they were published, as the plaintiff insisted, to accomplish the threatened purpose of the defendant "to finish Mr. Fry." (4 Duer. 249.) In 3d Phil. on Ev. 560, (Edw. ed.,) it is said evidence is admissible of other words and libels which show the defendant's malice towards

the plaintiff in defaming him in the manner charged in the declaration.

The exception to the ruling of the judge upon the objection that the trial should not be had before him, for the reason that he had tried the cause on a former occasion, was frivolous. The practice of re-trying causes before the same judge who presided at the first trial, has continued from the time of the organization of the Supreme Court, and an objection to such proceeding is unheard of. No different rule has been adopted for the Superior Court of the City of New York. Even a justice of the peace may try an action between the same parties, involving a cause of action which was the subject of a former action between them, where the judgment rendered by the justice, in such former action, has been reversed. The reasons given in the Superior Court are sufficient to show the correctness of the ruling on this point. It has been held by the unanimous decisions of this court, that it is the right and the duty of a judge of this court to take part in the determination of causes brought up for review from a subordinate court of which he was a member, and in the decision of which he took part. The reasons for this rule apply with stronger force to the case of a judge re-trying a cause which he had previously tried, and in which his decisions, on the former trial, have been passed upon by the court. See *Pierce* v. *Delamater*, (1 Comst. 17.)

We think that there was no error in the ruling that the plaintiff had the right to open and close the case. The general rule is, that the party who has the affirmative of the issue, has the right to open and close the case. But to this there are exceptions, which are subject to the discretion of the judge who tries the cause. Where the action is one sounding in damages, in which it is proper for the plaintiff to give evidence to enhance the damages, the usual course is to allow the plaintiff to begin and close the trial. (1 Phil. Ev., Edw. ed., 818, 819, 820.) The recent decisions seem to regard the question, as to which party shall

open the case, as one of practice, to be regulated by the dis-·
cretion of the judge, and that his decision upon it is not a
subject of exception. In *Booth* v. *Miller*, (15 L. J. 354,) it
was said that the weight of. authority seems to hold that an
erroneous ruling as to the right to begin, to be ground for a
new trial, must have worked manifest injustice. We can
not see that the defendant suffered from the ruling in the
case, and if we had the power to review a decision upon a.
matter which is the subject of discretion, we should not be
disposed to reverse the judgment in the case for error in the
exercise of discretion.

It was clearly competent for the plaintiff to prove the ex-
tent of the circulation of the New York Herald, at the time
the libel was published. The editor and proprietor of a news-
paper is presumed to have knowledge of its contents. In·
the case of *Rex* v. *Gutch and others,* it was held that the
proprietor of a newspaper was prima facia liable criminally for
what appeared in it, but that this presumption might be rebut-
ted. The fact having been proved that the defendant was the
proprietor of the paper in 1848 and 1849, it was to be pre-
sumed that he continued to be the owner in 1851. Only so
much of the article in the Herald as showed its circulation
at the time the libel was published was permitted to be read
in evidence.

This disposes of the objections to the evidence stated in
the case. It was wholly unnecessary for the plaintiff to aver
or prove that he had taken out a license to give operatic
representations under the acts of 1829 and 1839. The legal
presumption was that he had not violated these statutes.
If the defendant wished to avail himself of the defense that
the plaintiff had not the requisite qualification under the
statute, he should have alleged it in his answer. The bur-
den of proving the want of qualification was upon the de-
fendant. This question is discussed in Starkie on Slander,
(ch. 26, p. 384,) and the rule is laid down there as I have
stated. In the case of *Dr. Morse* v. *Dr. Thorton,* (8 T. R.

303,) proof of qualification was required of the plaintiff, for the reason that he had specifically alleged it. The proof of the plaintiff's license, under objection, though unnecessary, for the reason that it was not within the issue, could not by possibility have harmed the defendant, and the judgment should not be reversed for the admission of such inchoate testimony. It is a rule in both criminal and civil cases that a judgment will not be reversed or verdict set aside on exceptions, although there was error in the trial, if the error was such as could do no legal injury. This rule was applied in a capital case. (*Shorter* v. *The People*, 2 Comst. 194.)

There was no error in the supposed ruling of the court, as assumed in the defendant's 8th point, that the plaintiff might prove who were chorus singers, orchestra or principal singers, with a view of showing that the same persons performed at the opera. The case shows that the court merely allowed evidence of who were opera singers.

The court properly excluded a part of the deposition of Foster. It was a mere expression of the opinion of a witness. The same remark may be made of the portion of Maretzek's testimony which was excluded. He was allowed to testify to facts from which the jury could form their opinion as to the effect of the libel upon the plaintiff's business.

The answer to the question, "How did Mr. Fry treat his artists?" was also properly qualified by the court, in requiring the witness to state the facts showing such treatment.

The admission of the plaintiff's programme in evidence, was proper, for the reasons stated by Bosworth, J. in his opinion in the Superior Court. We also adopt his reasoning, and the conclusions from it, in reference to the matters embraced in the 15th and 16th exceptions of the defendant. The questions presented in the 12th, 13th, 14th, 15th, 16th, 17th and 18th points of the defendant's counsel were not pressed upon the argument, and we think the reasonings and conclusions of the court below, in relation to such of them as were then considered, are correct. The case does not show

that the defendant's counsel requested the court to stop the plaintiff's counsel, and prevent his making remarks, which are urged as inappropriate. An objection was taken to remarks made by the plaintiff's counsel as to the character of the New York Herald, and the court immediately replied that the plaintiff's counsel was drawing upon his imagination, which was equivalent to saying that there was no evidence in the case justifying the remarks which were objected to. The plaintiff's counsel was then allowed to proceed with his remarks to the jury, and the defendant's counsel desired the court to say that a legal proposition, stated by the plaintiff's counsel, was not the law. To this the court replied that he would state to the jury what was proper to be said, at the end of the summing up, and therefore the defendant's counsel stated that he excepted to the refusal of the court then to stop the counsel. This exception assumes that a request had been made that the court should stop the counsel, and that this request had been denied, whereas neither the request nor the refusal appear in the case. The ruling of the court upon the legal proposition stated by the plaintiff's counsel, and which was objected to by the defendant's counsel, would have had quite as much effect if made in the course of the delivery of the charge of the judge, as if made at the time the objection was made. It is not usual for the court to pass upon legal propositions presented by counsel in their addresses to juries, until the charge is given to the jury.

Upon a view of the whole case, we can discover no reason for reversing the judgment. The judgment is affirmed.

SELDEN and MARVIN, JJ. expressed no opinion.

All the other Judges concurring,

Judgment affirmed.