## MALLOY *v.* BENNETT.

*(Circuit Court, S. D. New York.* February 21, 1883.)

1. ACTIONS FOR LIBEL—NEW TRIAL—SURPRISE—EXCESSIVE DAMAGES, ETC.

Where a new trial is asked for on the ground of surprise, and that the party seeking the new trial forgot to offer certain letters in evidence, the omission to show the letters, or copies of them, is significant, and raises an inference against their importance.

2. SAME—PROOF OF FALSITY OF STATEMENTS.

It is not necessary for the plaintiff, in a suit for libel, to disprove the truth of the criminal charges contained in it; but he may always give proof of the falsity of the statements in order to enhance damages. It is only by such evidence that the essential character of the publication can be determined.

3. SAME—MENTAL SUFFERINGS.

Mental suffering is one of the elements of personal injury for which compensation should be awarded, and this, even when the injury is not malicious, but merely negligent.

4. SAME—EXEMPLARY DAMAGES—PRINCIPAL AND AGENT.

There is nothing in the law of damages, or of principal and agent, to justify the assumption that the principal is not liable in exemplary damages for the acts of his agent. An employer is responsible for the willful as well as the negligent acts of his servants, when they are performed in the course of the servant's employment. Actions of libel, so far as they involve questions of exemplary damages, and the law of principal and agent, are controlled by the same rules as are other actions of tort. The right of a plaintiff to recover exemplary damages exists wherever a tortious injury has been inflicted recklessly or wantonly, and it is not limited to cases where the injury resulted from the personal malice or recklessness of the defendant. It follows that the owner of a newspaper is responsible for all the acts of omission and commission of those he employs to edit it and manage its affairs, as he would be if personally managing the same.

5. SAME—NEW TRIAL IN ACTIONS FOR LIBEL.

The court will not grant a new trial in actions for libel on the ground of excessive damages, "unless the amount is so flagrantly atrocious and extravagant as to show that the jury must have been actuated by passion, partiality, prejudice, or corruption."

6. SAME.

Where it seems evident that the refusal of the court to charge the jury as requested, though such refusal be not properly subject to an exception, had the effect upon the jury to render their verdict larger than it otherwise would have been, the court will grant a new trial.

At Law.

*Wm. L. Royall,* for plaintiff.

*John Townsend,* for defendant.

WALLACE, J. The defendant moves for a new trial upon the several grounds of surprise, excessiveness of damages, and error in the rulings upon the trial. The action is for libel. The jury found a verdict for plaintiff for $20,000.

On October 31, 1881, the New York *Herald,* a newspaper of which the defendant was the proprietor, published an account of a disastrous fire which on the day before had nearly destroyed the village of Edgefield, South Carolina. The account purported to be a communication from the special correspondent of the *Herald.* It occupied nearly a column of the paper, and was calculated to attract the attention of all the readers of the paper. After describing the incidents, and enumerating the losses and peril of life caused by the fire, the account stated that the fire was supposed to be the work of an incendiary, and that the leading citizens of the place were of the opinion "that one Malloy, a white man who some time ago was suspected of burning his own store for the purpose of obtaining the insurance, kindled the fire which resulted so disastrously." The account proceeded to set forth the suspicious circumstances pointing to the guilt of Malloy, and concluded by the statement that he had hastily left the place; that a party of men were out in search for him; and that the people of the place were swearing vengeance upon him, and he was to be summarily dealt with if caught.

Upon the trial it was proved that the whole account, so far as it related to the charge of incendiarism, was a fabrication. To show that the plaintiff was the Malloy referred to, it was proved that he was the only person of that name in Edgefield, and that he had, a year or so before, lost his store by fire, and his claim for insurance upon it had been contested by the insurer.

So far as the present motion proceeds upon the grounds of surprise, the case made for the defendant does not merit discussion. If there was surprise it was inexcusable; and if the letters which the defendant forgot to offer in evidence were of any importance, the fact cannot be ascertained, because copies of them have not been exhibited. The omission to show the letters is significant, and raises a somewhat cogent inference against their importance.

The rulings upon the trial, which are asserted to be erroneous, relate to the reception of evidence against defendant's objection, and to the instructions to the jury. Most of them involve only the appli-

cation of familiar rules of evidence, and the elementary principles of the law of libel.

It is urged that it was error to permit the plaintiff to show affirmatively that the statements in the publication relating to the charge against the plaintiff were without color of truth. It is not necessary for the plaintiff in a suit for libel to disprove the truth of the criminal charges contained in it; but no doubt is entertained that it is always competent to give affirmative proof of the falsity of the statements in order to enhance damages. *Fry* v. *Bennett*, 28 N. Y. 324. It is only by such evidence that the difference between a technical or erroneous misstatement and a reckless or cruel perversion of the facts can be discriminated, and the essential character of the publication appreciated.

The instruction to the jury that the injury to the plaintiff's feelings caused by the publication was to be considered in awarding damages, was confidently challenged on the argument. All the commentators and authorities treat mental suffering as one of the elements of the injury for which compensation should be awarded. 2 Greenl. Ev. § 267. Even when the injury is not malicious, but merely negligent, the plaintiff is entitled to a *solatium* for his mental suffering. *Blake* v. *Midland Ry. Co.* 10 Eng. Law & Eq. 437; *Seger* v. *Town of Barkhamshall*, 22 Conn. 296, 298; *Canning* v. *Williamstown*, 1 Cush. 451; *Ransom* v. *N. Y. & E. R. Co.* 15 N. Y. 415.

It is insisted that the instructions in reference to exemplary damages were erroneous. The jury were instructed that although there was no reason for imputing personal malice towards the plaintiff to the defendant, still, they were at liberty to consider whether there was such recklessness in the publication, and such indignity in the subsequent treatment of the plaintiff by the *Herald*, as to entitle plaintiff to exemplary damages. It was in evidence that although the plaintiff had twice applied to the managers of the newspaper for the name of the author of the communication, no notice was taken of the request; but that a month or so after the publication an editorial paragraph was published which was capable of being construed as derogatory to the plaintiff.

The argument for the defendant seems to assume that the proprietor of a newspaper has some peculiar immunity from liability for exemplary damages; that he should not be held responsible for the acts of his employes; and that in this case if they were reckless, indifferent, or indecent in their treatment of the plaintiff, their conduct should not be imputed to him. There is nothing in the law of dam-

ages or of principal and agent to justify such an assumption. The action of libel, so far as it involves questions of exemplary damages and the law of principal and agent, is controlled by the same rules as are other actions of tort. The right of a plaintiff to recover exemplary and punitive damages is not peculiar to actions of defamation; it exists whenever a tortious injury has been inflicted recklessly or wantonly; and it is not limited to cases where the injury has resulted from the personal malice or recklessness of the defendant. It is recognized and enforced against employers when there has been gross misconduct on the part of their employes. *Beach* v. *Ry. Co.* 1 Dill. 569; *Milwaukee & St. P. R. Co.* v. *Arms*, 91 U. S. 489; *Phila., W. & B. R. Co.* v. *Quigley*, 21 How. 202. The authorities are ample to the effect that an employer is responsible for the willful as well as the negligent acts of his servants when they are performed in the course of the servants' employment. The doctrine is well stated in Sherman on Negligence, § 65, where the author says:

"There is no such rule of law as that the master is not liable for the willful and wrongful acts of his servants, though such a doctrine has often been propounded in judicial opinions. The true ground upon which a master avoids liability for most of the willful acts of his servants, when unauthorized by him, is that they were not done in the course of the servant's employment."

Tested by these principles, it cannot be doubted that when the owner of a newspaper delegates to others the power to edit it and publish it and manage its affairs generally, he is responsible for all the acts of omission and commission of his employes in this behalf, and cannot shirk liability for their misconduct because he has abandoned to others that supervision which he might have exercised himself. If he allows incompetent, careless, or unscrupulous agents to wield the vast power of such an instrumentality, he must stand by all the consequences when it is used to strike down reputation.

The more difficult question presented by the motion is whether the damages awarded by the jury were not excessive. If this question were to be determined exclusively in view of the character of the publication, the subsequent conduct of the defendant, the injury to the plaintiff which might be legitimately inferred, and the limitations which should be imposed upon the discretion of a jury in awarding punitive damages, it would be a delicate and difficult one.

The original publication, although its sensational character and flagrant mendacity were well calculated to outrage the feelings of the plaintiff, was so destitute of a color of truth that it could

not seriously injure him in the estimation of the immediate community in which he lived; nor is it reasonable to suppose that it could have injured him permanently in his good name in the opinion of any person who had sufficient interest in him to investigate the facts. These considerations were suggested to the jury, though perhaps not as fully as they should have been. If the case had been one for compensatory damages only, the verdict would be so clearly excessive as to justify the inference that the jury acted under misconception, or were influenced by partiality or prejudice. But the facts and the instructions of the court authorized a verdict for exemplary damages. The jury, undoubtedly, regarded the refusal of the defendant's newspaper to give the plaintiff the name of the author of the communication, and the editorial paragraph which it subsequently published, as aggravations of the original wrong which deserved severe condemnation. When a newspaper, after publishing an atrocious calumny, refuses to retract it upon discovering its true character, and refuses to disclose the name of the originator, fair-minded men are disposed to think that the conductors of the paper are willing, deliberately and completely, to assume the paternity of the slander, and identify themselves with the author. If the ethics or canons of journalism do not permit the names of anonymous correspondents to be disclosed, or retractions to be made, such a code will hardly be respected in the jury-box or find many advocates upon the bench.

The alleged retraction published by the defendant's newspaper was probably construed by the jury as a studied attempt to ridicule the plaintiff; as meant to be read between the lines; as intended by its qualified negations and pregnant implications to disavow what was inconsequential, and reiterate what was substantial in the original calumny. So far as the *animus* of the retraction was important in determining whether it was an aggravation or a mitigation of the libel, it was the province of the jury to decide the question. It may be that they drew a wrong conclusion, and misconceived the spirit of the article. If the retraction was designed, as it may have been, to sooth the wounded feelings of the plaintiff, and announce to those who knew him that the newspaper had been led by haste, inadvertence, or imposition into doing him injustice, the purpose was equivocally expressed, and the defendant cannot complain if the jury deemed it a cowardly and churlish attempt to escape responsibility without making reparation.

Upon the assumption that the case was one in which the plaintiff was entitled to exemplary damages, not only because of the reck-

lessness of the original publication, but also because the wrong was aggravated by the subsequent conduct of the defendant, by what standard can it be determined that the jury overstepped the limits of their fair discretion? Such damages are awarded upon the theory that public example requires the defendant to be punished. What is the measure of punishment which may reasonably be inflicted upon a defendant who permits the vast power of an influential newspaper to be used to befoul the good name of an inoffensive citizen, and then refuses to make the only reparation that can mitigate the wrong?

Notwithstanding the very exceptional, perhaps unprecedented, damages awarded in this case, it is not clear that the verdict could be set aside without departing from the rules which control the judicial discretion upon motions of this character. It is said by Chancellor KENT, (*Coleman* v. *Southwick*, 9 Johns. 45,) that the court will not grant a new trial in actions for libel on the ground of excessive damages, "unless the amount is so flagrantly atrocious and extravagant as manifestly to show that the jury must have been actuated by passion, partiality, prejudice, or corruption." The very large verdict rendered by the jury has led to a critical review of the proceedings at the trial, in order to ascertain whether anything took place which may have unduly influenced their judgment; and the conclusion is reached that they may have derived a wrong impression from the court's refusal to give them an instruction requested by the defendant.

The plaintiff's counsel, in his opening address to the jury, with considerable amplification depicted the injury in the nature of special damages which the plaintiff had sustained by the libel, among other things stating that he had been compelled to abandon Edgefield as his place of business and residence. When evidence tending to show special damages was offered by the plaintiff, it was objected to by the defendant, because there were no averments of special damage in the complaint; and the objection was sustained and the evidence excluded. Later in the course of the trial, however, the plaintiff proved, without objection by the defendant, that he had abandoned his residence at Edgefield.

The jury were explicitly instructed in the charge by the judge that the plaintiff was not entitled to recover special damages, because the complaint did not contain the requisite averments. Among the requests for instructions, 16 in number, made by the defendant, there was one to the effect that the jury should disregard the statements of fact made by plaintiff's counsel in his opening, except so far as

the same might have been proved on the trial.   As the jury's attention had been directed to the precise issues to be considered, and to all the evidence bearing upon the question of damages, and as they had been explicitly instructed as to the rules of law relating to special damages, and to decide the whole case upon the evidence introduced, this particular instruction was deemed unnecessary; therefore was not given.   It was deemed unnecessary in view of the instructions already given, but the reason was not announced; and it was denied in a general refusal to instruct otherwise than had been already charged.   This refusal is not now believed to have been an error or legitimately subject to an exception.   It was one resting in discretion.   With an ordinary verdict it would not deserve attention, but with this verdict it starts the suggestion that the jury may have misconceived the reason why it was withheld.   The refusal to give it was especially liable to misconstruction in view of the testimony that the plaintiff had abandoned Edgefield, and that his counsel had dwelt upon this as one of the elements of a recovery for special damages.   Solicitous that the defendant shall have the full and exact measure of justice to which he is entitled, and doubting whether the large verdict against him may not have been influenced by misapprehension on the part of the jury, the motion for a new trial is granted, in the belief that a thorough and deliberate consideration of the controversy by a second jury will best advance the ends of justice.