Albert M. Kalbfleisch et al., Respondents, *v.* The Long Island Railroad Company, Appellant.

One whose premises adjoin a railroad is not chargeable with contributory negligence simply because he took out of doors and used upon his premises an inflammable article necessary to be used in the business carried on on the premises, to which, through the negligence of the railroad company, fire was communicated by sparks from one of its engines; the mere location of the road and its use do not operate as a prohibition upon certain branches of industry in its vicinity, which may be endangered by such use.

(Argued April 30, 1886;  decided June 1, 1886.)

Appeal from judgment of the General Term of the City Court of Brooklyn, made June 26, 1884, which affirmed a judg-

ment in favor of plaintiffs, entered on a verdict, and affirmed an order denying a motion for a new trial.

This action was brought to recover damages for alleged negligence on the part of defendant, causing the destruction of plaintiffs' varnish factory by fire.

The material facts are stated in the opinion.

The General Term held that it was not negligence for plaintiffs to carry on a varnish factory where they did as matter of law, and that as the defendant had omitted to ask to have that question submitted to the jury, and had not excepted to the charge, it could not complain.

*William J. Kelly* for appellant.

*William M. Dykman* for respondents.

DANFORTH, J.  The defendant, at the close of the plaintiffs' case, moved the trial judge to dismiss the complaint on the ground " that the taking out of the inflammable benzine was contributive negligence.  Also, that there is no evidence that the fire came from the defendant's engine."  The motion was denied, and an exception then taken raises the only question we can consider.  It appeared that the plaintiff was the owner of certain buildings in Brooklyn, adjoining the tracks and station of the defendant, which he leased to one Lewis Kupper, who used them as a varnish factory.  In September, 1882, the latter was engaged in making black varnish and had commenced thinning it down with benzine.  It was giving off vapor.  At that time defendant's train stopped at the station to let off its passengers, " when," according to one witness, " she started off again and commenced to puff," and he says, " I saw a flash come from the engine right into the kettle and it was all on fire; "  " the train had just got in front of our place when it catched on fire."  " I looked up," he says, " and the vapor was afire."  This was about one o'clock.  The fire on plaintiffs' premises had been extinguished at eleven, and there was no fire in the neighborhood, except as it was emitted from the loco-

motive. That its condition permitted this escape was established by its engineer, who testified " that the wire netting " of the smoke-stack was out of order; " it was," he says, " split lengthwise of the smoke-box about a foot and a half, and through working the engine it opened it out and made a space there, I should say, very near a foot wide and a foot and a half long — open in the netting; this netting is supposed to be a spark arrester; it is right underneath the smoke-stack on the upper part of the smoke-box, under the stack on the inside of the smoke-box; that was the only thing there was there to arrest the sparks ; I know of this engine having set fire to lots of fences and one thing and another along the road that I know of; I knew it would set fire to fences about the beginning of September or the latter part of August of the same year."

On cross-examination by defendant's counsel, he testified that a week before the fire he reported this break when it first occurred to the master mechanic, and after the fire it was patched up.

" The effect of such a hole as I have described would be that all the sparks would come through the flues and would escape through the opening, where if the vent was closed the sparks would be arrested; I think it would increase the amount of sparks thrown largely — more.or less; it increased the sparks coming out of this engine."

This was the condition of the case when the motion referred to was made, and it is a complete answer to it, unless the mere · location and use of a railroad are to operate as an absolute prohibition upon certain branches of industry in its vicinity. By purchase such dominion might be acquired, but that is not pretended. In *Fero* v. *Buffalo and State Line R. R. Co.* (22 N. Y. 209, 215), the court found it difficult to maintain the proposition that one could be guilty of negligence while in the lawful use of his own property upon his own premises, but in the case before us the claim is advanced that the mere taking out and use of an article necessary in the manufacture carried on upon the plaintiffs' premises, put them beyond the protection of the law. In view of the fact that no impediment was offered to

the freest discharge of sparks from the defendant's engine, and the testimony of the eye-witness that the fire causing the injury came from it, the two grounds on which the defendant sought to arrest this case were equally untenable.  (*Fero Case, supra; Cook* v. *Champlain Transportation Co.*, 1 Denio, 91.)  The exception is, therefore, unavailing.  But the record shows that the plaintiffs afterward gave evidence, and the case was submitted to the jury in a manner satisfactory to the defendant, and, in the absence of. any request for a further charge, it must be presumed that the instructions given covered every point then thought by the defendant to be material. No exception other than the one above referred to was taken at the trial.

The judgment appealed from should be affirmed.

All concur.

Judgment affirmed.