# SUPREME COURT

OF THE

# STATE OF ARKANSAS,

AT THE

## NOVEMBER TERM, 1891.

---

RAILWAY COMPANY *v.* FIRE ASSOCIATION.

Decided November 28, 1891.

1. *Foreign corporation—Doing business in State.*

In a suit by a foreign insurance company arising out of a contract of insurance made by it, a complaint which alleges that plaintiff is a foreign corporation doing business in the State, but does not allege that the contract was entered into in the State, is not defective because it fails to state that plaintiff has complied with the conditions upon which foreign insurance companies are permitted to do business in the State; for, until it otherwise appears, the law presumes that the contract was not made in violation of the statutes or constitution.

2. *Pleading—Waiver of defenses.*

An answer which insists upon a foreign insurance company's failure to comply with the act of April 4, 1887, prescribing the conditions upon which foreign corporations may do business in the State, waives any non-compliance on its part with other statutory or constitutional provisions regulating the right of foreign insurance companies to do business in the State; and the defendant will not be permitted to insist upon such objection for the first time on appeal.

3. *Foreign insurance company—Act of April 4, 1887.*

   If the act of April 4, 1887, prescribing the conditions upon which foreign corporations may do business in the State, is applicable to foreign insurance companies at all, it does not affect rights acquired by them before its passage.

4. *Foreign corporations—Right to litigate.*

   A foreign corporation may litigate in Arkansas without complying with the constitutional and statutory provisions regulating the right of foreign corporations to do business here.

5. *Insurance company—Subrogation.*

   An insurance company which has been compelled to pay for goods destroyed by fire is entitled, by way of subrogation from the assured and in his right only, to recover from the person who wrongfully caused the loss or damages sustained, to the extent of the amount paid.

6. *Evidence—Prejudice.*

   One cannot be heard to complain of the admission of evidence which could not have prejudiced him.

7. *Fire caused by locomotive—Contributory negligence.*

   It is not contributory negligence *per se* for a shipper to place cotton for shipment on private platform so close to passing engines that it is in danger of being ignited, and to leave it there without watch or guard, if the platform was constructed for the purpose of receiving freight and has been used by the railroad company for receiving cotton.

8. *Railroad—Liability for damages from fire.*

   A railroad company is liable for damages resulting from fire communicated from sparks emitted from a locomotive engine on its road, occasioned by the negligence of its servants or by its failure to use the safest engines in use, equipped with the best approved appliances to prevent the escape of sparks.

9. *Practice—Re-opening case.*

   After the evidence was closed but before the argument was commenced, the defendant offered to introduce material but cumulative evidence, newly discovered and of which defendant could not, by proper diligence, have had previous knowledge. The witnesses being present in court and no reason appearing why their testimony should not be taken, the court's refusal to admit it was *held* an abuse of discretion.

APPEAL from *Columbia* Circuit Court.

CHARLES W. SMITH, Judge.

STATEMENT BY THE COURT.

The Fire Association of Philadelphia and the Southwestern Commercial Company sued the St. Louis, Arkansas and Texas Railway Company, in the Columbia circuit court, for

damages caused by the burning of cotton by a fire on the first day of April, 1887, at Magnolia, Arkansas. Plaintiffs alleged in their complaint that the Fire Association of Philadelphia was a corporation existing under the laws of Pennsylvania, and was engaged in entering into contracts of insurance and taking risks against fire and loss thereby in the State of Arkansas, and that the Southwestern Commercial Company was a corporation organized under the laws of the State of Missouri, and was engaged in buying and selling cotton in this State. That, on the 7th day of January, 1887, the Fire Association of Philadelphia insured the Southwestern Commercial Company to the extent of $3000, against any loss which it might sustain by fire consuming or damaging certain cotton on or before the 27th day of May, 1887; that, on the 1st day of April, 1887, a fire occured which consumed and damaged the cotton insured to the amount of $1493 79; and that, in consideration of its liability, the Fire Association, on the 16th day of May, 1887, paid the sum of $1478.86, which was the amount of the loss, less a certain discount; and that, on the day following, the Southwestern Commercial Company, in consideration of the payment, transferred and assigned to the Fire Association its claims against the defendant for damages by reason of the fire. Plaintiffs further alleged that the fire was caused by the defective condition of a locomotive engine of the railroad company then used in operating its railway; and that, because of an insufficient spark arrester, great and unusual amount of sparks escaped from the engine and burned the cotton.

The railway company answered the complaint and denied the allegations therein as to the cause of the fire; and alleged that the burning of the cotton was the result of and caused by the carelessness and negligence of the Commercial Company in placing the cotton near the track of the defendant and not having the same properly guarded and watched; and that the plaintiffs were foreign corporations

and had failed to comply with the act of the general assembly of the State of Arkansas, entitled "An act to prescribe the conditions upon which foreign corporations may do business in this State," approved April 4, 1887.

There was no controversy about the ownership of the cotton or the insurance thereof by the Fire Association. It belonged to the Commercial Company. It was admitted that it was consumed in part, and partly damaged, by fire on the first of April, 1887. There was no conflict in the evidence adduced at the trial as to the defendant's locomotive, which plaintiffs alleged caused the fire, being in bad condition at the time the fire occurred. The engineer who was in charge of it says: " The engine was disconnected on one side on account of a broken valve. This made it throw out sparks. The engine had been in that condition since that morning. The engine was in good and proper repair up to the morning of the day on which the fire occurred. It had no spark arrester. They are not used on that kind of an engine. There was a netting in the funnel. It had a hole in it, but had been there only since that morning." Another witness testified that it made a noise, as it passed the cotton in question, "just as if one of the valves was out of fix." He said: " It threw out sparks from the smoke-stack when it made the noise. He had noticed something wrong with the engine several times before this. It was in a bad fix. A few days before it set the woods afire going to McNeil, and set a log heap afire twenty feet from the track."

Evidence was adduced tending to prove the following facts: A private platform was constructed by the merchants of Magnolia about sixty yards north of the depot, and only a few feet from the railway track in that town, and was used for loading cotton. The railroad company had been receiving freight from it, and had been issuing bills of lading for cotton placed upon it for shipment, before the fire occurred. On the evening of the 31st of March, and on the morning of the first of April, 1857, the Southwestern Com-

mercial Company placed forty-six bales of its cotton on this platform for shipment, which cotton was insured by the Fire Association. The Commercial Company, desiring to ship it to some place east of the Mississippi river, applied, on the 30th or 31st of March, to defendant's agent at Magnolia for a bill of lading by which the defendant would undertake to ship it as desired, and the agent declined to give such a bill of lading, saying that he had no rates to such a place. The charges which had been fixed for shipping cotton to eastern cities and towns were cancelled a day or two before, and the defendant's agent had been notified and instructed to ask for special rates before making shipments to the east. He telegraphed and asked for instructions as to the terms upon which the cotton could be shipped to its destination. While waiting for the instructions, the said locomotive, emitting showers of sparks, an unusual quantity, on account of its defective condition, passed the cotton on the first day of April, 1887, about 2 o'clock in the afternoon. Fire was communicated to the cotton by the sparks falling on it, and about twenty-six of the bales were destroyed, and the remainder were more or less damaged, by the fire. The damage was $1493.79, which was paid by the Fire Association. The Commercial Company, in consideration of the payment, then transferred and assigned, by an instrument in writing duly executed by it, to the Fire Association all the claim or right it had to recover damages on account of the fire.

The evidence as to the cause of the fire was conflicting. There was evidence tending to prove that the locomotive was not emitting sparks a short time before and at the time it passed the cotton, and that the fire was burning the cotton before the locomotive reached the platform. There was no evidence that either of the plaintiffs had notice of the defective condition of the locomotive before the fire occurred.

The certificate of the Secretary of State, bearing date the 30th of August, 1888, was read as evidence. He certified in the certificate that neither the Fire Association nor the

Commercial Company had before, on or since, the 4th day of April, 1888, filed in his office a certificate designating a citizen of this State as its agent, upon whom service of process might be made, and stating its principal place of business in the State of Arkansas.

When the testimony was closed, the further progress of the trial was postponed until the morning following. On the next morning before the jury were instructed, the defendant's counsel announced to the court that since the adjournment they had discovered other evidence material to the defendant, of which they did not previously know, and could not have known by proper diligence, and that the witnesses were present in court, and that they expected to prove by them that the fire occurred in the absence of the train, and before it reached the platform, or was sufficiently near to communicate fire to the cotton; and asked that they be permitted to prove these facts by the witnesses; and the court refused to allow them to testify.

At the request of the plaintiffs and over the objection of the defendant and after the close of the evidence, the court, among others, gave to the jury the following instruction: "The jury are instructed if they find from the evidence that the plaintiff, the Fire Association of Philadelphia, did insure the plaintiff, the Southwestern Commercial Company, in the sum of three thousand dollars, against the loss or damage by fire on certain cotton, described in the policy of insurance No. 764,308, and that said cotton or any portion of it was destroyed or damaged by fire, wholly under the terms and condition of said policy, and the said Fire Association became liable to pay and did pay said Commercial Company the sum of one thonsand four hundred and ninety-three dollars and seventy-nine cents, and that, in consideration of said payment and prior to the institution of the suit, the said Commercial Company did assign, set over and transfer to said Fire Association all the rights, claims and interest and demand which said company had against the St. Louis, Arkansas and Texas Railway Company, or any person, party

or corporation who may be liable for the burning or destruc-
tion of said cotton, then is said association subrogated to all
the rights of said company under said policy; and if you
further find from the evidence that any portion of said cot-
ton was damaged or destroyed by fire escaping from defend-
ant's engine, and that this was caused by the negligence of
defendant, then your verdict may be for the plaintiff, the
Fire Association of Philadelphia."

The defendant asked and the court refused to instruct the
jury substantially as follows: That, if the plaintiffs, the Fire
Association and the Commercial Company transacted busi-
ness in the State of Arkansas prior to and on the fourth day
of April, 1887, and after that date, it devolved on them to
show by a preponderance of the testimony that they and
each of them did, on or within ninety days after the 4th
day of April, 1887, file in the office of the Secretary of the
State of Arkansas a certificate under the hand of its presi-
dent and the seal of the corporation, designating a citizen of
the State of Arkansas as an agent of the corporation, upon
whom summons and other process against the corporation
might be served, and also naming its principal place of busi-
ness in this State, and they failed to do this, or if the Com-
mercial Company did business in this State prior to the
4th day of April, 1887, and on and after that date, and did
not, on the 4th day of April, 1887, or within ninety days
thereafter, file in the office of the secretary of State such cer-
tificate—to find for the defendant. And if they "believed from
the evidence that the Southwestern Commercial Company vol-
untarily placed the cotton in question near defendant's rail-
way on a private platform, where it was exposed to danger,
and so close to passing engines that it was in danger of be-
ing ignited, and left it there to await a reply to an applica-
tion for lower rates of transportation of the same, without
proper watch or guard over it," or if they believed that the
Commercial Company, by placing the cotton on a private
platform so near the railway track of the defendant as to
expose it to danger from passing engines, thereby directly

contributed to the burning of the same, they should find for the defendant, notwithstanding they believed that the emission of the sparks was owing to the neglect of the defendant to keep its locomotive in repair and good condition.

The result of the trial was a verdict and judgment in favor of the Fire Association against the railroad company for $1629.80. From this judgment the defendant has appealed.

*Jefferson Chandler* of St. Louis, *Montgomery & Moore*, and *Sam H. West* for appellant.

1. If the property was burned by the company, such burning was a tort. Cooley, Torts, 591. The gist of such an accident is negligence. *Ib.*, 590. This being so, the action must be supported upon one of two grounds. First, that the tort or wrong was done to the Commercial Company, and it has a legal right under the laws of Arkansas to assign its right of action to the Fire Association, independent of any contract of insurance. This cannot be maintained. Second, that there existed such a legal or equitable agreement between the railway company, the Commercial Company, and the Fire Association, in respect of said cotton and the burning thereof, as to subrogate the Fire Association, without any assignment in writing, to the rights of the Commercial Company. The Fire Association had no contract with the railway company, directly or indirectly, and no privity between them. 59 Texas, 674; 17 How., 155. The insurance company is not subrogated to the rights of the shipper. 111 U. S., 593; 21 A. & E. Ry. Cases, 117, 119; 95 U. S., 758; 39 Me., 253.

2. The weight of testimony is against the verdict, and so clearly as to shock a sense of justice. 26 Ark., 309; 34 *id.*, 632.

3. The court abused its discretion in not re-opening the case and allowing the defendant to introduce further testimony. 42 Ark., 542; 4 Burr., 25, 39; 5 A. & E. Enc. Law, p. 681, note 4; 34 Barb., 293; 34 Ark., 383; 37 *id.*, 395; 32 *id.*, 309; 37 *id.*, 562; 30 *id.*, 312; 32 *id.*, 585; 36 *id.*, 629;

43 *id.*, 151 ; 14 Ga., 242 ; 89 Ind., 501 ; 59 Miss., 561 ; 54 N. Y., 292.

4.  Plaintiff cannot recover in this suit. It was a foreign corporation and had failed to comply with our laws. Sec. 11, art. 12., const. 1874; 18 How., 404; 13 Pet., 519; 94 U. S., 539; 8 Wall., 68; 10 Wall., 410; 6 Ore., 431; 55 Ill., 85; 58 Ind., 187; 36 Iowa, 546.

5.  The Commercial Company cannot recover by reason of its contributory negligence. 38 N. Y., 440; 32 Ohio, 66; 21 Minn., 293; 36 Ark., 371; 36 *id.,* 41; Cooley on Torts, 661; 6 S. W. Rep., 549; 2 Wood, Ry. Law, 1364; 2 Rorer on Railroads, 793; 25 Kas., 419; 59 Tex., 674.

6.  When the burden of proof is thrown upon defendant, it is relieved from the onus by showing it had used all precautions known and approved for the prevention of injury by fires. 61 Tex., 663; 59 Tex., 677; 47 Ill., 505; 21 Minn., 60; 45 Mo., 322; 2 Wood, Ry. Law, 1347, note 3.

*Scott & Jones* for appellee.

1.  While we have no statute expressly authorizing the assignment of claims like this, and while personal torts are not assignable at common law, yet where property is injured or destroyed, and the measure of damages is the value of the property only, such a chose in action is assignable. Mansf. Dig., sec. 4934; 1 Peters, 183, 213; 41 Fed. Rep., 643; Burrill on Assignments, 3d ed., sec. 103; 35 N. W. Rep., 609; 38 Barb., 20; 63 N. Y., 15; 8 A. & E. Ry. Cases, 710.

2.  The law presumes that all persons have complied with the law. If plaintiff had not complied with the law, it was matter to be pleaded and cannot be reached by demurrer, The answer alleges only that plaintiffs had failed to comply with the act of April 4, 1887. The fire occurred before the act was passed. Foreign insurance companies are governed by ch. 83, Mansf. Dig., and there is no attempt to show that this chapter had not been complied with in all things.

3.  The court did not err in refusing to permit defendant to reopen the case on the second day of the trial and intro-

duce further testimony. There was no abuse of discretion. 30 Ark., 327 ; 32 *id.*, 309.

4. The evidence sustains the verdict, and it will not be disturbed where there is any evidence to support it. 27 Ark., 592 ; 31 *id.*, 165 ; 46 *id.*, 149 ; *ib.*, 527.

5. The instructions as to negligence and burden of proof are law. When it is proven that the fire escaped from the locomotive, in order to rebut the presumption of negligence it devolved on defendant to prove that it was using proper and safe locomotives and engines, *and* its servants were conducting them in a proper and safe way. 53 Mo. 366 ; 60 Mo., 227 ; 49 Ark., 535. The fact that contributory negligence was raised by the answer does not shift the burden of proof so that it rests on plaintiff to show negligence on part of defendants. 6 S. W. Rep., 549 ; 49 Ark., 535 ; 46 *id.*, 182 ; 48 *id.*, 129 ; 48 *id.*, 348, 475 ; 46 *id.*, 436. Contributory negligence is a question of fact for the jury. 46 Ark., 423 ; 37 *id.*, 526 ; 49 *id.*, 182 ; 52 *id.*, 368 ; 75 Mo., 653 ; 24 Ohio St., 654. Placing the cotton on the platform was not the juridical cause of the injury. 4 Cal. 30 ; Wharton, Neg., sec. 324. Contributory negligence is no defense where the direct cause of the injury is the omission of the defendant, after becoming aware of the injured party's negligence, to use a proper degree of care to avoid the consequences thereof. 48 Ark., 129 ; 46 *id.*, 513 ; 36 *id.*, 377 The direct cause of the injury was the defective engine, and defendant had knowledge that the cotton was on the platform, and of its proximity to the track and its inflammable nature.

BATTLE, J., after stating the facts as above.

1. Foreign corporations doing business in this State.

It is contended in behalf of appellant that the demurrer filed by it should have been sustained because it was stated in the complaint that the plaintiffs were foreign corporations, and did business in the State of Arkansas. This is true, but it was not alleged that the contract of insurance made by them was entered into in the State of Arkansas, and hence

it was not necessary to state in the complaint that the plaintiffs had complied with the conditions upon which they could do business and had the right to make the contract in this State. Until it otherwise appears, the law presumes it was · not made in violation of the statutes or constitution of this State. *Fry* v. *Bennett*, 28 N. Y., 324, 330; *Chatauque Co. Bank* v. *Risley*, 19 N. Y., 369, 381; *Farmers' Loan and Trust Co.* v. *Clowes*, 3 Comst., 470; *Boulware* v. *Davis*, 90 Ala., 207. Inasmuch, then, as it was not shown in the complaint that the contract of insurance was made in Arkansas, and the fact should be that it was and that it depended for its validity upon the compliance of appellees with the conditions upon which foreign corporations are permitted to do business in this State, the appellant could not have taken advantage of it by demurrer, but should have done so by answer, as in that case it would have been a matter of defense. *Christian* v. *American Freehold Land Mortgage Co.*, 89 Ala., 198.

The defendant in its answer, without showing that the contract in question was made in this State, alleged that the plaintiffs had no right to maintain this action, because they had not complied with the act of the general assembly of the State of Arkansas, entitled "An act to prescribe the conditions upon which foreign corporations may do business in this State," and approved April 4, 1887. The ground of its demurrer was, "The complaint did not state facts sufficient to constitute a cause of action." But it does not affirmatively appear that the authority of the plaintiffs to make contracts in this State was questioned by the defendant until its answer was filed. Taking it for granted that the contract was made in the State of Arkansas, the presumption is that, in undertaking to show in its answer why the plaintiffs could not transact business here, it stated all the grounds upon which it could attack their right to do so, and that, by the answer, it abandoned its demurrer in that respect. While their authority to make the contract of insurance, if a question, was a question of fact, it based its.

2. When answer waives other defenses.

whole defense in that respect upon the failure of the plaintiffs to comply with the act of April 4, 1887. Had it alleged in its answer that the contract was made here and that the plaintiffs had failed to comply with the other statutes or constitutional provisions regulating their right to do business in this State, it may be the defense could have been met and overcome by proof to the contrary. Hence the appellant will not be permitted to call their compliance with such laws in question in this court for the first time. *Guin* v. *Mortgage Co.*, 8 So. Rep. (Ala.), 388; *Robinson* v. *Insurance Co.*, 51 Ark., 441, 446.

3, Effect of act of April 4, 1887.

If the contract in question was made in this State, was it necessary for appellees to comply with the act of April 4, 1887, in order to constitute it a valid contract? Certainly not. If the act of April 4th be applicable to foreign insurance companies in any case,* it certainly did not affect the contract in question, because the contract was made and the cotton was burned before it was enacted.

4. Right of foreign corporation to sue.

Appellees, notwithstanding they are foreign corporations, have a right to litigate in the courts of this State, without complying with the constitutional and statutory provisions which regulate their rights to do business here, because the institution and prosecution of a suit are not doing business, within the meaning of such provisions. *Christian* v. *Mortgage Co.*, 89 Ala., 198; *Guin* v. *New England Mortgage Co.* (Ala.), 8 So. Rep., 388; 2 Morawetz on Corp., sec. 662, and cases cited.

The court properly refused to instruct the jury to find for the defendant in the event they believed that the plaintiffs had not complied with the act of April 4, 1887.

5. When insurance company subrogated to assured's rights.

The contract of insurance being valid, and the Fire Association having paid the amount of the loss sustained by the burning of the cotton insured, it thereby became subrogated to the assured's right of action against the person or corporation who wrongfully caused the fire and loss, to the extent of the amount paid. This right of action acquired

*See *St. Louis, etc., Railway* v. *Commercial Ins. Co.*, 139 U. S., 223.—REP.

by the Fire Association does not depend on any contract or privity existing between the assured and the person responsible for the loss. But it grew out of the contract of insurance, and is derived from the assured alone. By that contract the insurer undertook to indemnify the assured against loss. The wrongdoer, in the order of ultimate liability, was primarily liable for the loss. Both were responsible to the assured. The loss for which they were responsible was one and the same, and the assured was entitled to but one satisfaction. It had a right to demand and receive payment of the loss from the insurer by virtue of its contract, as it did, without seeking to recover it of the wrongdoer. As it did so and received payment of the insurer, the wrongdoer was not thereby discharged from liability, but the insurer succeeded to and became entitled to the assured's rights to relief against him to the extent of the amount paid as an indemnity, he being primarily liable; and the assured holds the claim against him in trust for the insurer. In other words, the insurer became subrogated to the assured's right of action against the person primarily liable, to the extent of the loss paid. It took nothing but the rights of the assured, and can enforce them in its right only. If the assured had no right of action, none passed to the insurer. *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Commercial Union Ins. Co.,* 139 U. S., 223, and cases cited; *Gales* v. *Hailman,* 11 Pa. St., 515; *Hart* v. *Railroad Co.,* 13 Met., 99, and cases cited; *Swarthout* v. *Chicago & Northwestern Ry. Co.,* 49 Wis., 625; *Bean* v. *Atlantic Ry. Co.,* 58 Me., 82; *Peoria Ins. Co.* v. *Frost,* 37 Ill., 333.

The case of *Insurance Co.* v. *Brame,* 95 U. S., 754, cited by the appellant, is wholly unlike this. In that case the plaintiff insured the life of one McLemore, a citizen of Louisiana, for the amount of $7000, in favor of third parties. On the 24th of October, 1875, while the policy of plaintiff was in force, in the State of Louisiana, Brame, the defendant, wilfully shot and killed McLemore. A part of the policy was paid. The plaintiff insisted that the killing was an

illegal and tortious act on the part of Brame, and caused damage to it in the amount of its policy. The court held that, inasmuch as at common law no civil action lies for an injury which results in death, and injuries to the person abate by death, and inasmuch as the statutes of Louisiana, where the homicide was committed, gave no right of action to any one for damage to the person in case of the death of the person injured, except to the minor children and widow of the deceased, and, in default of these relations, to the surviving father and mother, and inasmuch as the relation between the insurance company and McLemore was created by a contract between them to which Brame was not a party, and the injury inflicted by him upon McLemore was a personal injury and McLemore died, the plaintiff had no right of action against Brame and could not recover. *The E. B. Ward*, 16 Fed. Rep., 255, 258.

In this case the insurance company is not entitled to recover, if at all, in its own legal right, but under the equitable doctrine of subrogation, applicable to cases "wherein a party, who has indemnified another in pursuance of his obligation so to do, succeeds to, and is entitled to a cession of, all the means of redress held by the party indemnified, against the party who has occasioned the loss." This doctrine was not applicable to the Brame case. *Conn. Ins. Co.* v. *N. Y. R. Co.*, 25 Conn., 265.

6. When evidence not prejudicial. The appellant objected to the introduction at the trial of the written agreement by the Commercial Company with the Fire Association as evidence. But we are unable to see any force in this objection, since the latter became subrogated to the right of action of the former against any other party who caused the loss, without any formal assignment by the assured of his claim against such party. It did not prejudice appellant by showing the loss paid, as the uncontradicted evidence was that the damage to the cotton by the fire was equal to the amount paid by the insurance company.

Was the railroad company responsible for the loss? The principal question in the case is, Should the instructions as

to negligence asked for by the defendant and refused by the court have been given? The answer to the former depends on the answer to the latter question.

The instructions were to the effect that it was contributory negligence *per se* for the Commercial Company to place cotton near appellant's railway on a private platform where it was exposed to danger and so close to passing engines that it was in danger of being ignited, and to leave it there without watch or guard over it. We think the court properly refused to give such instructions. The fact that the cotton in question was placed on a platform where it was exposed to danger did not cause the owner to forfeit the protection of the law. The cotton was placed on a platform constructed near the track of the railroad for the purpose of receiving freight for shipment, and where the railroad company had been receiving cotton. The owner had the right to place it there, and in doing so did not lose its right to compensation for its destruction or damage occasioned by the negligence of the appellant. *Cook* v. *Champlain Co.*, 1 Denio, 91 ; *Grand Trunk R. Co.* v. *Richardson*, 91 U. S., 454 ; *Kalbfleisch* v. *Long Island R. Co.*, 102 N. Y., 520 ; *Longabaugh* v. *Virginia City R. Co.*, 9 Nev., 271 ; *Pittsburgh, etc., R. Co.* v. *Nelson*, 51 Ind., 150 ; *Brown* v. *Atlanta, etc., R. Co.*, 19 S. C., 39; *Pittsburgh, etc., R. Co.* v. *Noel*, 77 Ind., 110; *Gulf, etc., R. Co.* v. *McLean*, 74 Texas, 646; *St. Louis, etc., Ry. Co.* v. *Hecht*, 38 Ark., 357; *Kellogg* v. *Chicago, etc., Ry. Co.*, 26 Wis., 223; *Philadelphia R. Co.* v. *Hendrickson*, 80 Pa. St., 182 ; *Snyder* v. *P. C. & St. L. Ry. Co.*, 11 W. Va., 14, 37 ; *Philadelphia R. Co.* v. *Schultz*, 93 Pa. St., 341 ; *Pittsburgh, etc., R. Co.*, v. *Jones*, 86 Ind., 496 ; *Richmond & Danville R. Co.* v. *Medley*, 75 Va., 505 ; *Louisville R. Co.* v. *Richardson*, 66 Ind., 43 ; *Burke* v. *L. & N. R. Co.*, 7 Heisk., 451 ; 1 Thompson, Neg., pp. 168, 169 ; 2 Shear. & Red. on Neg. (4th ed.), secs. 680–682, and cases cited.

When an owner places his property near the track of a railroad in an exposed and hazardous position, he assumes the risk of fire following the proper and lawful use of loco-

7. When owner of property burned not guilty of contributory negligence.

8. Liability of railroad for damages by fire.

S C—12

motives.    The more combustible his property is or the more
hazardous the position, the greater is the risk he assumes.
But he does not  assume the risks of the neglect of the rail-
road company.    He is under no obligation to anticipate that
and to provide against it.    If, in the lawful use of his prop-
erty, he exposes it to danger, he does not thereby lose his
remedy for damage by fire occasioned  by the culpable neg-
ligence of the company.    Before he can do so, he must be
guilty of some wrongful act or culpable negligence which
contributed to produce the injury, and neither can be af-
firmed of the owner in the case supposed.    *Cook* v. *Cham-
plain Co.*, 1 Denio, 91 ; *Philadelphia R. Co.* v. *Hendrickson*,
80 Pa. St., 182 ; *Alpern* v. *Churchill*, 53 Mich., 607 ; *Phila-
delphia R. Co.* v. *Schultz*, 93 Pa. St., 341 ; S. C., 2 Am. &
Eng. R. Cases, 271 ; *B. & M. R. Co.* v. *Westover*, 4 Neb.,
268, and the cases cited above.

The rule releasing the defendant from liability on account
of the contributory negligence of the plaintiff is limited
to cases where the negligent act or omission of the plaintiff
contributes to produce the loss as a proximate cause, and
not as a remote cause or mere condition.    In order  to
avail the defendant anything, " there must be, not only
negligence on the  part of the plaintiff, but contributory
negligence, a real proximate causal connection between
the plaintiff's negligent act and the injury, or it is no
defense to the action."    There can be no reason in reliev-
ing the defendant from liability for the loss on account of
the negligence of plaintiff, if the negligent act of plaintiff
in nowise directly contributed to produce the injury.    " I
may negligently leave my goods in a warehouse," says Mr.
Wharton, " but this is not the juridical cause of their de-
struction, if such destruction comes, not as a natural and
usual result of my negligence, but through the negligence of
another who sets fire to the warehouse.    In other words,
*  *  *    my remote negligence will not protect a person
who, by proximate negligence, does me an injury."    *Flynn* v.
*San Francisco R. Co.*, 40 Cal., 18 ; *Kline* v. *Central Pacific*

*R. Co.*, 37 Cal., 400, 406; *Needham* v. *R. Co., id.*, 409, 417; *Littleton* v. *Richardson*, 32 N. H., 59; *Norris* v. *Litchfield*, 35 N. H., 271; *Philadelphia R. Co.* v. *Hendrickson*, 80 Pa. St., 182; *B. & M. R. Co.* v. *Westover*, 4 Neb., 268; Beach on Contributory Neg., secs. 10, 11; Wharton on Neg., sec. 324.

The placing of the cotton on the platform by the Commercial Company was not the proximate cause of the loss in this case, but the fire which consumed it. If the fire was communicated by the locomotive of the railroad company, the liability of the company depends upon the care it used to prevent the accident. If it used the proper precaution and diligence to prevent the escape of fire from its locomotives it would not be, but if the loss was occasioned by its failure to use such precaution and diligence it would be, responsible, as in that case its negligence would have been the immediate cause of the fire. What proper precaution and diligence was it bound to use?

Railway companies, being authorized by law to use steam in the operation of their trains, are bound to use locomotive engines which are in use and are of the safest construction for protection against the communication of fire therefrom to property along the lines of their roads, and to supply them with the best approved appliances and contrivances used to prevent the escape of sparks and coals therefrom to the endangering of the property of others, and to use them upon the road with such care and diligence as would be exercised by skilful, prudent and discreet persons having the control and management of them, and a proper desire to avoid injury to the property along the road. The failure to use such locomotive appliances and contrivances, and such care and diligence, on the part of the companies, will be negligence, and will subject them to a recovery for damages occasioned thereby, provided they occur without the contributory negligence of the owner of the property injured or destroyed. *B. & S. R. Co.* v. *Woodruff*, 4 Md., 242, 257; *F. & B. Turnpike Co.* v. *P. & T. R. Co.*, 54 Pa. St., 345; *Jackson* v. *Chicago, etc., R. Co.*, 31 Iowa, 176; 2 Wood's Railway

Law, p. 1343, sec. 326; 2 Shear. & Red. on Neg. (4th ed.),. secs. 672, 673; 1 Thomp. on Neg. (2d ed.), sec. 872, and cases cited.

There was, therefore, no error in the refusal of the court to give the instructions as to negligence which were asked by appellant, as before stated. The instruction asked for by the appellees and given by the court was substantially correct.

**9. Practice as to re-opening case.** But we do think the court erred in refusing to allow appellant leave to introduce the testimony of witnesses which was discovered after the close of the evidence. At least four witnesses, in behalf of appellees, had testified that they saw the cotton just before appellant's train reached the platform and saw no smoke or fire about it, and immediately after the train passed saw the fire burning the cotton. Only one, in behalf of appellant, testified that she saw smoke arising from the cotton before the train reached the platform or passed the cotton. Appellant offered to prove by one of the witnesses, whose testimony it asked the privilege to introduce after the close of the evidence, that she saw smoke arising from the cotton when the train was about two hundred yards from it, and by another one of them that she saw smoke arising from the cotton before the train reached it. This testimony was important to appellant, and was pertinent to the most material issue in the case. The witnesses were present, and to have allowed them to testify could not have materially delayed the trial. The introduction of their testimony should have been allowed, subject to rebuttal or explanation by appellees. The refusal to allow appellant leave to introduce it was not a proper exercise of judicial discretion. Courts should exercise their discretion as to the admission of evidence, under such circumstances as this evidence was offered, for the advancement of the right and to the end that justice may be done conformably to the laws. *Meacham* v. *Moore,* 59 Miss., 561; *Smith* v. *State Ins. Co.,* 58 Iowa, 487; *Meyer* v. *Cullen,* 54 N. Y., 392; *Owen* v. *O'Reilly,* 20 Mo., 603; 1 Thomp. on Trials, sec. 348.

Reversed and remanded for a new trial.