FRANK C. KLINE, Plaintiff, by Henry Starr, his Guardian *ad litem* v. THE CENTRAL PACIFIC RAILROAD COMPANY OF CALIFORNIA.

DAMAGES FOR INJURY BY RAILROAD CAR.—In a suit brought by a boy sixteen years old for damages for injury sustained by being forcibly expelled from a railroad car, if the testimony tends to show that the plaintiff is told he cannot ride, and that he is ordered by the conductor, with a show of force, to get off the car, a nonsuit should not be granted upon the ground that the carelessness and negligence of the plaintiff contributed to his injury.

FORCIBLE EJECTION FROM RAILROAD CAR.—If a boy, sixteen years of age only, leaps from a railroad car while in motion, in obedience to the command of the conductor, accompanied by a show of force, the Court cannot say judicially that the act of the boy was voluntary, but should leave it to the jury to say whether, under all the circumstances, the conduct of the conductor did not amount to compulsion.

LIABILITY FOR REMOVING PERSON FROM RAILROAD CAR.—Although a person gets upon a railroad car wrongfully and as a trespasser, for the purpose of riding without paying his fare, yet the conductor, if he resolves to exercise his right to remove him, must do so prudently, and in such a manner as not to endanger his personal safety. If he do not exercise this prudence, and injury result, the company cannot absolve itself from liability on the ground that the wrong was mutual.

IDEM.—If, in such case, the conductor sees the person attempting to get on the car, he may use force to prevent him, and no liability will result from injury but if the person is once fairly on the car, care must be exercised in his removal.

DAMAGES WHERE BOTH PARTIES ARE IN WRONG.—The rule that the plaintiff cannot recover damages if his own wrong, as well as that of the defendant, conduced to the injury, is confined to cases where the plaintiff's wrong or negligence has immediately or proximately contributed to the result.

WHEN ACT OF AGENT BINDS PRINCIPAL.—If the act of the agent is within the general scope of his authority, or is specially approved by the principal, the principal is liable for all damages sustained thereby

LIABILITY OF COMPANY FOR ACT OF RAILROAD CONDUCTOR.—It is within the scope of the general authority of a railroad conductor to remove persons from the cars who get on wrongfully; but if, in so doing, he does not exercise care and caution but acts maliciously, and injury results, the company is liable.

COMPANY LIABLE FOR ACT OF RAILROAD CONDUCTOR.—A railroad conductor is not acting outside of his authority in admitting on its cars all persons properly seeking admission as passengers, or in excluding all who do not come as passengers, or are not fit to be admitted, and the company is liable for his wrongful performance of either.

APPEAL from the District Court, Sixth Judicial District, Sacramento County.

The plaintiff appealed.

The other facts are stated in the opinion of the Court.

*Henry Starr*, for Appellant.

The fact that one person is in the wrong does not, in itself, discharge another from the observance of due and proper care toward him.   There have been numerous adjudications, both in England and this country, where parties have been held responsible for their negligence, although the party injured was at the time of the occurrence culpable, and in some of the cases, in the actual commission of a trespass.   (*Kerwhacker* v. *Cleveland, Columbus and Cincinnati R. R. Co.*, 3 Ohio, 189.)   There is a class of cases in which defendants who are guilty of negligence have been holden responsible for their misconduct, although culpable acts of trespass by the plaintiff produced the consequences.   (3 Ohio, 190; 2 Redfield, 3d Ed., 197, 198; *Brown* v. *N. Y. C. R. R. Co.*, 9 Tiffany, 597; *Lovett* v. *Salem and South Danvers R. R. Co.*, 9 Allen, 557–559; *Buel* v. *N. Y. C. R. R.*, 4 Tiffany, 314; *Philadelphia R. R.* v. *Derby*, 14 Howard, 468; also, 16 How. 469.)   It is immaterial that no fare was paid, or if it had been intended not to pay any.   (*Todd* v. *Old Colony F. R. R. Co.*, 3 Allen, 18.)   It is also immaterial that the servants of

the company acted in willful disregard of orders. (*Southwick* v. *Ertis*, 7 Cush. 385; *Weed* v. *Panama R. R.*, 5 Duer, 193.) And the plaintiff might be a trespasser. (*Daily* v. *Norwich and C. R. R.*, 26 Conn. 591; *Lynch* v. *Nordin*, 1 Q. B. 29; *Norris* v. *Litchfield*, 35 N. H. 271; *Newson* v. *N. Y. C. R. R. Co.*, 2 Tiffany, 283.)

*Robert Robinson*, for Respondent.

By the Court, SANDERSON, J.:

This is an action to recover damages for personal injuries sustained by the plaintiff, by reason of his having been, as alleged, wrongfully expelled from the cars of defendant by the conductor while the cars were in motion.

The plaintiff having introduced his evidence and rested, the defendant moved for a nonsuit upon the following grounds:

1st. Because the evidence showed that the plaintiff was guilty of inexcusable carelessness and negligence in running upon the cars while they were in motion.

2d. Because the evidence showed that the negligence and carelessness by reason of which the plaintiff was injured was mutual.

3d. Because the evidence showed that the plaintiff was wrongfully upon the cars, and, therefore, cannot recover for the negligence of the defendant in putting him off.

4th. Because the evidence showed that the plaintiff was injured solely by the wanton and malicious act of the conductor, for which the defendant cannot be held responsible.

The Court sustained the motion, but did so upon the last ground only. The respondent, however, abandons none of its grounds in this Court.

The plaintiff was examined as a witness in his own behalf. He testified that he was sixteen years of age at the time he sustained the injuries in question, and was then residing near the defendant's railroad, at the corner of Sixth and F streets,

in the City of Sacramento. That on the 2d of May, 1866, a passenger train was coming into the city and passing his residence on its way to the depot of the defendant, situated on Front street. That the train was going at a speed of about ten miles an hour. That he ran alongside the baggage car in the direction in which the train was going, caught hold of the iron rail at the steps leading up to the forward platform, and swung himself on to the steps, and thence ascended to the platform and took a position near the brake. That there was no one upon the platform at the time, but the conductor soon appeared and demanded "what he was doing" or "where he was going." He replied that he was going down to Front street, whereupon the conductor pushed or shoved him off the train, knocking him senseless. That the cars ran over his right leg, crushing it below the knee in such a manner as to render amputation necessary.

A witness by the name of Clark testified that he was at the plaintiff's house at the time, and saw him get safely on the car and ride there at least ten yards before the cars passed out of his sight. That it was one hundred and fifty yards, by actual measurement, from the place where the plaintiff got on to the car to the place where he fell or was forced off.

A Mrs. Moses, also testified that she saw the plaintiff swing himself on to the car in the manner stated, and was positive that he reached the platform in safety. That she also saw some person come out of the car on to the platform, after the plaintiff had reached it.

It also appeared by the testimony that soon after the accident the conductor visited the plaintiff at his house, to which he had been removed, and that the plaintiff pointed him out as the man who pushed him off the car, and the conductor denied that he did so. It also appeared that the conductor had received strict orders from the defendant to keep boys off the train, and that he had a man at the back end of the train with a club for that purpose. Also, that the conductor, according to his own statement, ordered the plaintiff *sharply* to get off the cars, telling him he could not be allowed to

ride, and that he put his hand on the plaintiff's shoulder at the same time.

A witness who was standing upon the platform of the hindmost car and looking forward, saw the plaintiff fall, and also the hands of some person "coming back" from the person of the plaintiff as he fell. A witness, who saw the plaintiff in the act of falling from the car, testified that he fell forward—that is to say, with his face toward the ground.

The foregoing is the substance of the testimony, so far as it illustrates the points made by the defendant on the motion for a nonsuit.

We think the testimony tends to show that the plaintiff did not fall in getting upon the car, and consequently did not receive his injury by reason of his wrongful, careless, and negligent attempt to get upon the car, as a proximate cause. He rode upon the car a distance of nearly one hundred and fifty yards, not merely hanging to it, but standing in safety upon the platform.

Being thus upon the car, did he fall off accidentally, or in attempting to leave voluntarily, or in getting off in obedience to the command of the conductor merely, or was he pushed off by the conductor? There is no pretense for saying that he fell off accidentally, or that he undertook to get off voluntarily. He must, then, have undertaken to get off because he was told that he could not ride, and was ordered to do so by the conductor, with a show of force; or he must have been with actual force pushed off by the conductor. Upon either hypothesis, we think, the plaintiff should not have been nonsuited.

Had the plaintiff been a man, or of mature age and discretion, it might be said, *judicially*, by the Court, that having jumped off the cars merely because he was commanded to do so, he had no one to blame but himself for the injury he sustained; but being a boy only sixteen years of age, we think it should have been left to the jury to say, whether in his case the sharp command of the conductor, accompanied

by a show of force, did not, under all the circumstances, amount to compulsion.

Where a boy ten years of age was upon the platform of a street or horse car, under circumstances very similar to those of the present case, and was ordered to get off by the driver, without stopping the car, and did so, and fell, and was run over by the car, the Court said: "If the plaintiff had been a person of mature age, the mere words of the driver could not have been regarded as equivalent to a forcible ejection of the plaintiff from the car, at a time when it was dangerous to leave it. For such a person might have exercised his own judgment as to the peril he might incur in attempting to obey the order. But the plaintiff was a child of about ten years of age. His obedience would be naturally expected, without regard to the risk he might incur; and in respect to a child so young, the command would be equivalent to compulsion." (*Lovett* v. *Salem and South Danvers Railroad Company*, 9 Allen, 561.) If this be sound doctrine, and we see no reason to doubt, can there be any period in childhood of which it can be said by the Court *judicially*, or as a matter of law, that the judgment is so far matured as to enable a child to so far withstand the positive and menacing command of one in authority, as to cast, in whole or in part, the responsibility of obedience upon the child, if his obedience results in personal injury to himself? There may be moral as well as physical compulsion, and the former may prove as effectual as the latter; how, then, is one who resorts to the former less culpable than one who employs the latter? Or, how can one, who finds himself unable to resist the former, be held more responsible for the consequences than when he yields, from necessity, to the latter? Can his obedience in the former case be considered the result of his own will any more than his ejection in the latter? If, as the testimony tends to show, the conductor sharply ordered the plaintiff to get off the cars, telling him that he could not ride, at the same time putting his hand upon his shoulder, as if to enforce obedience, and the boy then jumped, without

waiting for further actual force, or resisting until thrust off by the superior strength of the conductor, can we say *judicially* that his act was in any degree voluntary? The tone, manner, and whole bearing of the conductor may have satisfied the plaintiff that force would be used. If so, was not such a demonstration on the part of the conductor equivalent to actual and superior force? We have no doubt that in such cases a show or demonstration of force, sufficient to impress a reasonable person with the belief that it will be employed, must be held to be the equivalent of actual force. The danger of sustaining personal injury is much greater where a person is ejected by the use of actual force, than when he is ejected under circumstances which permit the exercise of some care on his part. It would be a rigid rule to require a person to subject himself to such extra hazard, after it has become morally certain that actual force will be used, in order to free himself from all responsibility in respect to consequences, and fasten it upon his adversary.

Without undertaking to lay down a general rule, we think that, under all the circumstances of this case, taking in consideration the youth of the plaintiff, the question of compulsion should have been allowed to go to the jury, even without taking into account the positive testimony of the plaintiff that he was forcibly pushed or knocked off the cars. Without his testimony there was evidence of conduct on the part of the conductor which a jury might reasonably hold to be equivalent to compulsion by actual force. Although the plaintiff was wrongfully upon the cars, the conductor was bound to exercise reasonable care and prudence in removing him. The rule that the plaintiff cannot recover if his own wrong as well as that of the defendant has conduced to the injury which he has sustained, is confined to cases where his wrong or negligence has immediately or proximately contributed to the result. We had occasion to consider this question in the case of *Needham* v. *San Francisco and San José Railroad Company*, (*post*,) and we there reached the conclusion just stated. If the plaintiff be in the wrong,

yet if his wrong or negligence is remote—that is, does not immediately accompany the transaction from which his injury resulted—the defendant cannot excuse himself on the score of mutuality, nor absolve himself from his obligation to exercise reasonable care and prudence in what he may do. In getting upon the train while it was going at a speed of ten miles an hour, the plaintiff was negligent— even though he attempted to do so as a passenger, with the intention to pay a fare; and if he had failed in achieving a safe landing, and had fallen in the attempt, no blame or liability could have been charged to the account of the defendant. If, as was doubtless the case, he got upon the car—as boys sometimes will—with intent to enjoy the stolen pleasure of a free ride to Front street, he came as a trespasser, and doubtless the defendant, acting contemporaneously, could have legally prevented him from getting on the car by the use of such force as may have been requisite, without becoming legally responsible or morally to blame for any injury which he might have sustained. And if he succeeded in getting upon the car without opposition, the defendant doubtless had the right to eject him by force, if force was necessary, but it was bound to exercise the right with ordinary care and prudence, and it had no right to eject him under circumstances which would endanger his personal safety. If the train was going at a speed which would render it unsafe for him to leave the car, it was the duty of the defendant, if determined to put him off, to stop, or "slow up" sufficiently to allow him to descend in safety, by the exercise of reasonable care and prudence on his part. Although his entry upon the car was a trespass, yet, if it was an accomplished fact, before the conductor attempted to interfere, his entry did not directly conduce to the injury which he sustained, but was, in the sense of the rule under consideration, only its remote cause, and did not, therefore, absolve the conductor from the duty of observing reasonable care and prudence in putting him off the train.

The ground upon which the Court below placed its judg-

ment—that the act complained of was the wanton and malicious act of a servant, acting without the scope of his employment, for which the master cannot be held responsible—remains to be considered

As to the general rule upon that subject there can be no doubt. If the act of the conductor, in putting plaintiff off the car, was a wanton and malicious act, committed out of the course of his agency, the defendant cannot be held responsible for the manner ·in which he did it, unless, however, the defendant expressly authorized the act. Was the act, then, either within the authority of the conductor, arising from his general relation to the defendant, or, if not, within any express authority shown by the testimony? If either, the plaintiff is not, on the score of remedy, confined to the conductor, but may look to his master. And in this respect we cannot assent to the conclusion which was reached by the Court below. In our judgment the act was within the scope of the conductor's general authority, and the testimony also shows that, aside from his general authority, he had special authority for what he did; and hence, upon both grounds, the defendant must be held responsible for the manner in which he acted. The truth of the first proposition is established by that which follows, from what has already been said as to the authority and power of the conductor to put the plaintiff off the cars. We have said that, under the circumstances of this case, he had authority to prevent the plaintiff from getting upon the cars, in the first instance, and to put him off in the second. This authority was incident to his position as chief officer of the train, and necessarily came, by implication, from the defendant, with his appointment to the place. It is the duty of the defendant, arising from the nature of its business, to admit into its cars all persons who seek admission as passengers and are willing and offer to pay legal fare, provided they are fit persons to be admitted and there is room for their accommodation. To itself and its stockholders it owes the contrary duty of excluding all persons who do not come as passen-

gers, or are not fit persons to be admitted, and the conductor is charged, by virtue of his position, with the performance of both, and is, necessarily, vested with the requisite power. It cannot be said that he is acting outside of his authority while he is engaged in the performance of either duty; on the contrary, he is acting strictly within the scope of his employment. In a conductor's excluding a person who is not entitled to be admitted or to remain in the cars, the relation of master and servant is as clear and apparent as it is in his receiving and providing for those who are entitled to admission. The relation being established, all else is mode and manner, and, as to that, the master is responsible.

But if there was any doubt as to the act in question being within the scope of the conductor's employment, when considered by the light of his general relation to the defendant, it is dispersed by the testimony in relation to the special instructions which he received from the defendant in relation to boys trespassing upon the cars.

There is nothing in the case of *Turner* v. *The North Beach and Mission Railroad Company,* 34 Cal. 594, which runs counter to this view.

Judgment reversed and new trial granted.