CHARLESTON.

BOGGESS *v.* CHESAPEAKE & O. R'Y CO.

Submitted June 21, 1892.—Decided December 10, 1892.

1. RAILROAD COMPANIES—PASSENGER—TRESPASS.

A person having a ticket for passage upon a railroad, who boards a frieght train which does not carry passengers, believing the ticket good on that train, is to be treated as a passenger and is not a trespasser.

2. RAILROAD COMPANIES — CONDUCTOR — CONTRIBUTORY NEGLIGENCE.

The conductor orders such person to get off the train while running at a speed which would endanger him in getting off, the conductor refusing to stop the train to allow him to get off, and in violent and insulting language threatens to eject the person from the train by force if such order is not obeyed, and has force at his command to execute such threat, and the person jumps from the train to avoid ejection by force. This is sufficient compulsion or show of force to excuse the person from the charge of contributory negligence in so jumping from the train.

*A. Burlew* and *O. Johnson* for plaintiff in error.

I.—*Defendant liable, if injury could have been prevented by ordinary care on its part, notwithstanding negligence of plaintiff.*—95 U. S. 439; 69 N. Y. 158; 29 Md. 420; 65 Pa. 269 ; 1 Q. B. 29; 17 Mo. 537 ; 43 Mo. 380; 47 Mo. 521; 50 Mo. 461; 65 Mo. 22; 64 Mo. 430 ; 62 Miss. 683; 46 Ill. 75 ; 2 Ro. R'ds 1054, 1040.

II.—*A person taking passage on wrong train can not be expelled as trespasser.*—26 Am. & Eng. R'y Cas. 489.

III.—*Commission of trespass does not justify reckless infliction of injury as punishment or for revenge.*—Pat. R'y Asc. Law § 198; 4 Am & Eng. R'y Cas. 527; 92 Ind. 601; 9 Am. & Eng. R'y Cas. 412; 22 Am. & Eng. R'y Cas. 360; 28 Am. & Eng. R'y Cas. 455; 8 Am. & Eng. R'y Cas. 347; 34 Am. & Eng. R'y Cas. 281; 26 Am. & Eng. R'y Cas. 489; 55 Ind. 502; 37 Cal. 400.

J. E. CHILTON for defendant in error.

I.—*The company had the right to refuse to carry passengers on its freight train.*—99 Ark. 357; Hutch. Carr. 538, note 2.

II.—*It is negligence to attempt to get off a moving train.*—112 Mass. 38; 3 Rob. (N. Y.) 25; 37 Cal. 406; 4 Am. & Eng. R'y Cas. 533.

BRANNON, JUDGE:

John G. Boggess brought an action of trespass on the case in the Circuit Court of Kanawha county against the Chesapeake & Ohio Railway Company. A demurrer to the declaration was sustained, and judgment rendered for the defendant, and the case was brought here by the plaintiff.

The declaration alleges that the plaintiff purchased of the defendant a ticket for his passage upon its railroad from Brownstown to Charleston, and got upon a freight train to go to Charleston, and that he believed that the ticket entitled him to ride upon said train, and that while the train was running at a speed which made it extremely dangerous for one to get off it, the conductor "ordered and directed the plaintiff to leave said train, and refused to stop said train to enable said plaintiff to do so without injury, and there and then, in violent and insulting language, threatened to put said plaintiff off said train by force if he declined to obey said order; and believing that said agent, with such force as he could command, would be able to and would eject the plaintiff from said train by force if he undertook to resist him, and believing, also, that an attempt to resist said agent would result in more serious injury to the plaintiff than he would be likely to receive by attempting to get off said train without collision with said agent,

and to avoid being forcibly ejected from said train, he undertook to get off said train, and in doing so used every care and precaution possible, but said train was running at such a rapid rate that in jumping from it he was injured," *etc.*

We can not regard the plaintiff a trespasser, if that be material; for even a trespasser on a train must be ejected at a proper time and in a proper manner. Having a ticket, and getting aboard a wrong train, believing his ticket would entitle him to ride upon it, he is not a trespasser, but a passenger. There is no question that a railroad company may make reasonable rules and regulations for the conduct of its business, nor that it has a right to appropriate certain of its trains for freight exclusively, and others for passengers, and to refuse to carry passengers on freight trains; but when a person with a ticket giving no notice of such rule is on a freight train, believing he has a right to ride on it, he is a passenger, and entitled to a passenger's rights while on it. 2 Ror. R. R. 984; 2 Wood, R'y. Law, 1047.

We do not question the right of a conductor of a freight train, which, by the rule of the company, is forbidden to carry passengers, to require a passenger to leave it, and even forcibly eject him, if necessary, in a manner such as is required by law; but it must be in that manner.

In this case the declaration states that the train was running at a speed rendering it extremely dangerous to get off it, and that the conductor refused to stop it to enable the plaintiff to get off it, and that the conductor nevertheless required the plaintiff, under such circumstances of imminent danger, to leave the train. Certainly, we are compelled to say in this the conductor was in the wrong. If determined that the plaintiff must leave the train at once, he should have stopped it for the purpose, or if that was inconvenient, or he did not choose to do so, he must allow the passenger to remain on the train until his next stopping place is reached, and not compel him, at the risk of his life, to jump from the rapidly-moving train. It needs no authority, though it is abundant, to show that neither a passenger nor a trespasser can be expelled from a train under circumstances imperiling his life or limb. Thus the company is in the wrong.

But it is said that while this may be true, and while, if the plaintiff had been ejected from the train by force, or a demonstration of force equivalent thereto, the company might be liable, yet the declaration does not show this to be the case, and that the plaintiff, without actual compulsion, though capable of seeing and judging the danger of the act, voluntarily risked that danger, and jumped from the running train, instead of acting prudently and standing his ground until ejected by actual force, and therefore he is guilty of contributory negligence preventing recovery in this case.

Here, in fact, is the crucial point in the case. Now, first, it may with force be said that it lies not in the company's mouth to say, after giving a command to the plaintiff to leave the train, that he ought not to have obeyed, but ought to have waited until the actual forcible compulsion came. It gave the command. Can it complain that it was obeyed?

But the quotation above from the declaration requires us to interpret it as stating that the conductor ordered the plaintiff to get off the train, and besides threatened to put him off by force, conveying such threat in insulting and violent language, indicative of earnestness and determination to execute the threat, and that the plaintiff believed he would execute it, and that the conductor, with help at his command, could execute it, and that the plaintiff, under all the circumstances, believed that an effort to resist being ejected by force would entail more danger of bodily injury than his getting off the train without collision with the conductor, and that the plaintiff jumped from the train to avoid being ejected by actual force.

If these things be true, we must say that the declaration alleges that the force would have come. If so, was the plaintiff compelled to wait for it, when it would certainly increase his danger? It would seem useless to await the force, if come it will. Must he who is about to receive the deadly blow wait till it fall before exercising self-defense? Or, rather, if he flees to escape it, and in so doing, and because of his flight, receives an injury, would not the one wrongfully compelling the flight be answerable? Can he say his adversary should not have fled?

In *K line* v. *Railroad Co.*, 37 Cal. 400, where a boy was ordered to get off a train while moving, the court in the opinion said:

"There may be moral as well as physical compulsion, and the former may prove as effectual as the latter. How, then, is one who resorts to the former less culpable than one who resorts to the latter? Or how can one who finds himself unable to resist the former be held more responsible for the consequences than when he yields, from necessity, to the latter? Can his obedience in the former case be considered the result of his own will, any more than his ejection in the latter? If, as the testimony tends to show, the conductor sharply ordered the plaintiff to get off the cars, at the same time putting his hand upon his shoulder as if to enforce obedience, and the boy jumped, without waiting for further actual force, or resisting until thrust off by the superior strength of the conductor, can we say judicially that his act was in any degree voluntary? The tone, manner, and whole bearing of the conductor may have satisfied the boy that force would be used. If so, was not such a demonstration on the part of the conductor equivalent to actual and superior force? We have no doubt, in such a case, a show or demonstration of force sufficient to impress a reasonable person with the belief that it will be employed must be held to be equivalent to actual force. The danger of sustaining personal injury is much greater where a person is ejected by the use of actual force than where he is ejected under circumstances which permit the exercise of some care on his part. It would be a rigid rule which would require a person to subject himself to such extra hazzard, after it has become morally certain that actual force will be used, in order to free himself from all responsibility in respect to consequences, and fasten it upon his adversary."

I think the general principles stated in the California case correct. It is a difficult matter to define "force," or say in exact language what in such a case as this is the show of force, short of actual force, which would justify the party in jumping from the train into danger. It assimilates itself somwhat to the question of duress under the law of

contracts. There the question is: Is this contract the act of the will of its maker, or his enforced act—the creature, not of his will, but of coercion by the other party? Here the question is: Was the act of jumping from the train the willing but reckless act of the plaintiff, or his unwilling act, attributable to the wrongful act and coercion of the conductor?

Mr. Bishop, in his work on Contracts (section 716) said: "It is immaterial whether the duress is actual or only, in a serious and effectual manner, threatened. This idea is expressed in the older books by dividing it, in the words of Blackstone, into two sorts—duress of imprisonment, where a man actually loses his liberty, and duress *per minas*, where the hardship is only threatened and impending."

In this case there is, if the declaration be true, much more than command. There is a threat, serious and violent, with ample capacity to execute it, and its execution certain to endanger the plaintiff more than if, without waiting for its execution, he jumped from the train, and this act was done only to avoid forcible ejection. Was there not a demonstration of force equivalent to actual force?

We think there is error in sustaining the demurrer, and we reverse the judgment, and remand the case for further proceedings, adding that we pass only on the face of the declaration, and indicate no opinion on the merits of the case, as it may appear on the evidence when tried.

REVERSED. REMANDED.