MARRERO, PLAINTIFF AND APPELLEE, v. AMERICAN RAILROAD
COMPANY, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Mayagüez in an Action
for Damages.

No. 2947.—Decided May 29, 1924.

DAMAGES—NEGLIGENCE—PLEADING.—It is not necessary to mention in the com-
plaint the law, regulation, jurisprudence or custom imposing upon the de-
fendant a duty toward the plaintiff if from the facts the existence of such
a duty appears; nor need all of the details of the facts be set forth, as
they may be established later by the evidence.

ID.—ID.—PUBLIC ROAD—INSULAR HIGHWAY.—As the evidence and the ocular
inspection showed that the accident occurred at a grade crossing on a road
open to the public during the daytime for the passage of vehicles and people,
it follows that the court did not err in classifying the said road as a public
road. That does not mean that the court classified it as an insular highway.

ID.—ID.—RAILROAD CROSSING—WARNINGS—TRACK AUTOMOBILE.—A railroad com-
pany is obliged to give warning by means of a bell or whistle when ap-
proaching not only a crossing on a street or insular highway, but a crossing
on a private road used by the public and recognized by the company by
setting up the necessary permanent notices; and that obligation, as well as
all others imposed by subdivision q of section 3 of Act No. 70 of 1917
, defining public service companies, etc., referring to locomotives, must be
complied with by track automobiles belonging to the company.

ID.—ID.—CONTRIBUTORY NEGLIGENCE.—Contributory negligence can not be at-
tributed to a plaintiff who before crossing the track stopped, looked up and
down the track as far as the topography of the land and the vegetation
permitted and not seeing or hearing anything abnormal, crossed the track
at a moment when there suddenly appeared, running at high speed, the auto-
mobile that injured him.

ID.—ID.—EVIDENCE.—The defendant introduced in evidence a statement made by
the plaintiff before a notary in the hospital a short time after he was in-
jured at the instance of an agent of the defendant company. It was stated
therein that the accident occurred while the plaintiff was attempting to save
a cow that he was leading. The plaintiff presented testimony tending to
show that his condition did not permit him to make a true declaration on
account of the blow received on his head and the anaesthetic administered
for the amputation of his arm, and that he answered all questions in the
affirmative. *Held:* That the court below acted correctly in refusing to credit
that evidence of the defendant.

The facts are stated in the opinion.

*Mr. M. Acosta Velarde* for the appellant.

*Messrs. Benet & Souffront* for the appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the
court.

This was an action for damages. Judgment was rendered against the defendant for the sum of $2,900. The defendant appealed and assigned eight errors, as follows:

"1. The court erred in rendering judgment against the defendant, because the complaint did not adduce facts sufficient to constitute a cause of action.

"2. The court committed manifest error in rendering judgment against the defendant, because the plaintiff did not produce evidence tending to show or prove that the person who was driving the track automobile alleged to have caused the accident was an employee of the defendant.

"3. The court erred in rendering judgment against the defendant, because there was no evidence that the track automobile alleged to have struck the plaintiff was driven by an employee of the defendant corporation, or that the said person was in the discharge of his duties or scope of his authority as employee of the defendant.

"4. The court committed manifest error in rendering judgment against the defendant on the ground that the road over which the plaintiff was traveling at the place where the accident occurred was a public road.

"5. The court committed manifest error in rendering judgment against the defendant on the ground that the defendant did not lessen the speed of the track automobile alleged to have struck the plaintiff or give warning when it was approaching the place of the accident.

"6. The court committed manifest error in rendering judgment against the defendant on the ground that the defendant was negligent in the operation or manipulation of the track automobile alleged to have struck the plaintiff and that this was the proximate cause of the accident.

"7. The court committed manifest error in holding that the plaintiff was not guilty of contributory negligence.

"8. The court committed manifest error in rendering judgment for the plaintiff, because according to the weight and preponderance of the evidence the defendant was not guilty of negligence nor of being the proximate cause of the accident, and according to the clear weight and preponderance of the evidence the plaintiff was guilty of contributory negligence, that being the proximate and immediate cause of the accident."

Let us analyze the first assignment.  The appellant maintains that the complaint did not adduce facts sufficient to constitute a cause of action against the defendant, because it did not allege facts or circumstances showing an obligation on the part of the defendant towards the plaintiff.

In the complaint it was alleged that the plaintiff was struck by a track automobile of the defendant in crossing the track at a grade crossing where it intersects a traffic road existing in front of a sugar factory which was in full operation, these facts being known to the defendant, and the plaintiff was unable to avoid the accident although he stopped and looked, because the automobile appeared suddenly and at an extraordinary and excessive rate of speed, without giving any warning of its approach.

It is not necessary to refer in the complaint to the law, regulation, jurisprudence or custom imposing upon the defendant a duty towards the plaintiff if from the facts such a duty appears.  Nor need all of the details of the facts be set forth, for they may be established later by the evidence. In our opinion the complaint was sufficient, especially when examined in connection with the evidence produced at the trial.  Perhaps it may be proper to say that here the evidence made out a more complete case than that set up in the complaint and that the question raised in the first assignment was raised for the first time in this Supreme Court.  This does not mean that such a question can not be so raised, but after the evidence has supplied any deficiency in the complaint the position of the defendant is very different.

The conclusion at which we have arrived is intimately related to the other errors assigned.  In discussing and deciding them we shall have occasion to make a clearer and more precise exposition of our attitude.  All of the assignments refer to the evidence and it seems proper to commence by quoting the findings of the trial court, as follows:

"From the evidence examined the court is of the opinion that it showed conclusively the following facts:

"That Ramón Marrero, the plaintiff, at about 1 p. m. on June 12, 1921, was driving a cow in the direction of the land contiguous to the factory of The Mayagüez Sugar Company from the land opposite to it and separated from it by the track of the defendant, having necessarily to cross the said track in front of the said factory; that at the same time and coming towards the north the defendant was driving on the said track an automobile belonging to it operated by employees of the defendant in the proper discharge of their duties and usual occupations as such employees of the defendant; that this automobile was coming at an excessive rate of speed and was being driven carelessly and negligently, without taking any precaution for the safety of persons who might cross the said track and without giving any warning of its approach to the grade crossing in front of the factory of The Mayagüez Sugar Company, which was indicated by the usual signs; that the defendant did not lessen the speed of its said automobile in approaching the said sugar factory and grade crossing, or give any warning when approaching and crossing another grade crossing about eighty meters distant from the former, or lessen the speed or give any warning in rounding a curve ten or twenty meters before arriving at the first grade crossing, or about one hundred meters before the crossing where the plaintiff was struck.

"It was also proved satisfactorily, in the opinion of the court, that the plaintiff was driving the cow along a public road leading from the highway to the factory of The Mayagüez Sugar Company where many people necessarily have to cross the defendant's track in order to reach the factory, the defendant being charged with knowledge that the said factory was in full operation, as it was during the grinding season, especially as the establishments of the factory, and more particularly its chimneys, can be seen from any point on the track and must have been seen by the crew of the said automobile, who knew that they were approaching the grounds of a sugar factory. That the plaintiff, Ramón Marrero, before reaching the grade crossing stopped at a proper distance and looked towards the north part of the track, but could not see the south part because of a sugar cane field and some *malojillo* grass which extended almost up to the track; that he also listened in order to ascertain whether any train, locomotive or automobile was approaching, but hearing no warning of the approach of a train, locomotive or automobile,

he drove the cow forward and proceeded towards the track where he was struck by the said automobile of the defendant, without having time to avoid it for the reason that the automobile appeared suddenly and at such an excessive rate of speed, without having given any warning of its approach, that the plaintiff could not notice it, notwithstanding the fact that as the crossing is a dangerous one the defendant should have exercised special care to avoid an accident. The court also finds that the said accident was due solely and exclusively to the gross negligence and carelessness of the defendant in the operation of the automobile in the manner alleged, and that the plaintiff was not guilty of contributory negligence, the court being absolutely convinced that the accident would not have occurred if the defendant had exercised due care by lessening the speed of the automobile and giving warning of its approach.

"The rate of speed at which the said automobile was running may be deduced from the testimony of the witnesses for the defendant, the crew of the automobile, to the effect that they did not notice the accident, although this was a fact proved beyond all doubt.

"The court also finds that as a result of the said accident the plaintiff suffered a comminuted fracture of the lower part of the humerus of his right arm, and also serious lacerations and contusions on the inner part of his right leg, bruises and wounds on the left side of his forehead and a laceration on the lower third part of his left leg, wherefore he had to be taken to the hospital of Dr. Pedro Perea in the city of Mayagüez, where he suffered the amputation of his right arm as a result of the fracture of the humerus. He had to remain in bed in grave danger of death for forty-two days, during which he suffered extremely acute pains and underwent painful treatment. That the said plaintiff was rendered incapacitated for work, owing to the loss of his right arm, for which reason the damages of $2,000 sued for in the complaint for the loss of his right arm and his physical incapacity for farm work, the kind of work in which the plaintiff engaged, for an estimated period of 25 years, $400 for medical services, medicines and hospital charges, and $500 for his physical and mental suffering, including the acute pains produced by the bruises and contusions and by the treatment, have been satisfactorily proved."

A careful study of the transcript leads to the conclusion that the evidence was properly weighed by the court and that on those points where there was contradictory evi-

dence it has not been shown that in adjusting the conflict the court acted with passion, prejudice or partiality or committed manifest error.

This general statement having been made, we shall follow the order adopted by the appellant in its brief and examine jointly the second and third assignments of error.

The appellant contends that there was no evidence tending to show that the automobile which caused the accident was driven by an employee of the defendant or that the employee of the defendant traveling in it was acting within the scope of his employment, for which reason it can not be concluded that the defendant is responsible for the injury. The appellant cites in support of this contention the following authorities, among others:

"A master is liable for the acts of his servant done in the course of his employment, but not for the acts done outside of his employment." *Kline* v. *C. P. R. R. Co.,* 37 Cal. 400.

"Beyond the scope of his employment, he is as much a stranger to his master as any third person." Story on Agency, 452; Smith on Master and Servant, 160.

The defendant admitted that one of its track automobiles went from San Germán to Mayagüez at about one p. m. on June 12, 1921, occupied by Arturo García, Jorge Orcasitas and Pedro Fernández, and it was shown by the evidence beyond all reasonable doubt that this was the automobile that caused the accident.

Who were its occupants? Orcasitas testified as a witness for the defendant that he was in the employ of the defendant as paymaster; that in the discharge of his duties he entrained in San Juan for Ponce. When asked how he returned he replied: "We, or rather I, had to remain in the Ponce workshop because there were some people there who had not been paid, and I heard that that automobile was there and then this García boy said that he knew how to drive it and I told him that we would go in it because I had to go to San Juan. It was Sunday and I wanted to spend

it at home, and also the next day was a working day and I had to be at the office." He denied that he had authority to take the track automobile, and when asked how they obtained the automobile he answered: "The automobile was there; they told me that it was there, and I wanted to go to San Juan, and as this boy told me that he knew how to drive it, I told him that we would take it and go in it to San Juan."

García testified also as a witness for the defendant that on the day of the accident he was a government detective. When asked whether the company's paymaster was traveling with him he replied: "The paymaster and another employee of the company traveled with me. I went as a detective. There was a strike and I had to watch the track and protect the employees of the company." He also said that he had left San Juan with the paymaster by train; that they missed the train on which they were to return and "Then I met a man by the name of Fernández with whom we conversed and Orcasitas said that if there was any automobile around there we would take it and go." When asked who took the automobile he replied: "Orcasitas was going to take the automobile, but Pedro objected and gave very good reasons, saying to him that García knew the road and is going with you and can take precautions at the curves and crossings. I think that with seven years' practice I know when I should apply the brakes, and now I would be willing to pass a test as to whether I know the road. So I took the wheel, or rather the brakes, for that car had no steering gear, but only brakes and the gasoline valves, and when we were a little beyond Guayanilla I stopped the car because the fans did not work and the motor was getting very hot."

Fernández, the other traveler, did not testify. The other witnesses said that he was an employee of the defendant who was going to San Juan to have his arm treated in the Auxilio Mutuo Hospital.

In our opinion the testimony of Orcasitas and García, taken in connection with the actual facts, supports the opinion of the trial court. The defendant is liable. Orcasitas was its paymaster. He went to Ponce in the discharge of his duties. His office was in San Juan. He had to return to it and wanted to spend Sunday at home. This may be deduced from his statement that he missed the train. And he missed it because he could not finish his work in time. Then he took the automobile. It must have been delivered to him by other employees of the company, or at least they must have known of his departure in the automobile. The tracks are under the control of the company. They can not be used at all hours. All depends upon a schedule prepared with mathematical accuracy. Otherwise collisions would inevitably occur. Although the paymaster said that he wished to go home because it was a holiday, he also testified that he had to be at his office on the following day. It is natural that his testimony should tend to exempt the company from liability, but the actual facts must govern.

The same is the case as regards the testimony of García, the detective. He was indeed a government officer, but at that time he was serving the company and undertook to drive the automobile with the consent of the paymaster and at the suggestions of Fernández, the other employee.

Under these circumstances we believe that the paymaster acted within the scope of his authority, with the knowledge and consent of the defendant, in taking the track automobile for returning to San Juan. But even if he had disobeyed the orders of his employer, the latter would be responsible.

"A master is bound not only to give proper instructions to his servants in sending them on an errand liable to involve him in liability, but he is bound to see that his instructions are obeyed." McClung v. Dearborne, 8 L.R.A. 204.

"The rule is that the acts of a servant within the general scope of his employment while engaged in his master's business and done

with a view to the furtherance of that business and the master's interest, the master will be responsible whether the act be done negligently, wantonly or even wilfully, and although the particular act may have been in excess of his authority and directly contrary to instructions." *Terry* v. *Burford,* L.R.A. 1915 F, 714.

In arguing the fourth assignment of error the appellant contends that it was greatly prejudiced by the finding of the court that the plaintiff was traveling on a "public road."

In our opinion that was not an error. We do not think that in using these words the district court had the intention of finding, for example, that the road was a public insular highway. The word "public" is used as meaning that the road was freely used by the public. There was not only oral testimony, but an ocular inspection. In the inspection the following was found:

"From the public highway running from Mayagüez to San Germán to the factory of the The Mayagüez Sugar Company there is a road which is traveled by automobiles, ox-carts and pedestrians, having the necessary width for such traffic.

"About 40 meters distant from the said sugar factory, which is known as the Rochelaise Central, the said road is crossed at right angles by the railroad track of the American Railroad Company of Porto Rico whose trains run to and fro between Mayagüez and Ponce.

"Going along the road towards the factory one finds on the right-hand side some notices of the defendant company fixed on a post in order to make them conspicuous and on which are printed in large letters the words 'look, stop, listen for the train' situated 8 meters from the track, or the crossing of the track and the road."

The fifth and sixth assignments should be considered together. They refer to the defendant's negligence.

The evidence is clear to the effect that the automobile of the defendant passed the said grade crossing without giving any warning and running at an extraordinary rate of speed.

Antonio Otero testified that the automobile "was going very fast; at full speed; fast, fast; as fast as it could go." Guillermo Lange, another witness for the plaintiff,

testified that the automobile was going "at a tremendous rate of speed; that it almost passed unseen; at about fifty or sixty miles an hour." Santiago Guerra testified: "I heard no noise of an automobile; the automobile was going at such speed that it hardly could be seen." Antonio Rovira testified that the speed of the automobile was "excessive, great." This testimony, together with the inference that the court in its findings drew from the statements of the occupants of the automobile, supports the conclusion of that court regarding the extraordinary rate of speed.

What was the condition of the place? We have seen that it was a grade crossing where the track crossed a road. There was another grade crossing about 80 meters distant and a curve about 10 meters away. This being so, did the trial court err in concluding that the defendant was negligent and that its negligence was the cause of the injury?

The appellant cites a decision of this Supreme Court wherein the following doctrine was laid down:

"There is no rule of law making it negligence *per se* for a trolley company to run its cars rapidly in a suburban district, and the decisions point to the contrary. The conclusion of the authorities is that while a street railway company must be exceedingly careful of the speed of its cars within an urban zone, in interurban or country zones it is more like a railroad, and the rule is that a person seeking to recover damages for injury in such zones must show that the speed was unreasonable under the circumstances." *Morales* v. *P. R. Ry., Light & Power Co.,* 27 P. R. R. 704.

And it also cites, among others, the following authorities:

"The omission of all signals at crossings is not negligence *per se* on the part of the railroad company." 22 R.C.L. 996.

"While there is slight conflict in the authorities as to whether signals are required at private crossings, the decided weight of authorities is that they are not required unless a statute so provide." Elliot on Railroads (2nd edition), sec. 1150.

"The mere fact that people occasionally or even frequently cross the tracks at a place where there is no public right of passage does

not reasonably require the company to treat it as a public crossing and as a general rule the company is not required as a matter of law, under ordinary circumstances, to signal the approach of its train.'' Elliot on Railroads, sec. 1151, p. 305 and cases cited in note 22. See 22 R.C.L. sec. 233, p. 1004; 33 Cyc. 964.

In order to impart full justice in this case it is necessary to consider as a whole all of the attending circumstances.

The grade crossing was not an ordinary one, but a crossing towards a sugar factory whose chimneys, according to the evidence, could be seen from a distance. Besides, near it there was another crossing and a curve, as we have said, and the witnesses testified that the trains of the company gave warning when passing. The crossing was duly recognized. It had been accepted by the defendant who had placed there the usual notices for avoiding accidents.

The defendant is the owner of its tracks. But when it recognizes a crossing it relinquishes a part of its right. It admits that the public may use the place as it does. Therefore both it and the public must take the necessary precautions.

''The obligations, rights, and duties of railroads and travelers upon highway crossings are mutual and reciprocal; neither has an exclusive right of passage. The railroad has the right to use its tracks, and the public have the right to use the crossing, and each should act with due regard for the rights of the other.'' 22 R.C.L., sec. 215, p. 987.

The law applicable here is section 12 of the Act concerning the regulation of railroad transportation of 1911, as amended by Act No. 12 of 1915. It reads in part as follows:

''Section 12.—Be it further enacted, that all railroad companies of public service be and are hereby obliged to construct and maintain chains, gates, or other suitable protective devices, at all grade crossings of insular public roads, and at all such other public crossings as the Executive Council may designate. *  *  *

''Subject to rules, regulations and orders of the Executive Coun-

cil, all public service railroads * * * shall provide their locomotives with bells and whistles which shall be used upon approaching curves, tunnels, and road or street crossings whenever necessary as a warning of the approach of such locomotives; * * *."

It is urged that the obligation to use bells and whistles obtains only when approaching a highway or street crossing, and that a highway is an insular road, or one entirely dedicated to the public. We can not agree with this proposition. When the lawmakers intended to refer only to the insular public roads they did so expressly, as in the first paragraph of the section quoted. In the second paragraph they used the word "road" with a much broader meaning. According to Escriche, "Road is the ground trodden by travelers going from one town to another, or from one place to another. * * * Roads are public or private. Public roads are those between two towns; and private roads are those that only serve for passing through the farms of some district. Either may be highways or trails. Highways are those over which traveling may be done in carriages and trails are those over which only horses pass."

The road in this case may be considered as a *private highway used by the public;* therefore, in passing over the grade crossing existing there, especially as the automobile was going at great speed and there was a curve and another crossing so near, the defendant should have given warning of its approach.

It is true that the law refers to locomotives, but it is also true that it was enacted for the purpose of imposing certain duties upon public service railroad companies and regulating the use of the tracks. Everything contained in it with regard to locomotives, considering the spirit and purpose of the statute, is applicable to track automobiles that can run, as said by an expert at the trial, sixty or sixty-five miles an hour, and they make considerably less noise than locomotives.

The seventh assignment refers to the contributory neg-

ligence of the plaintiff. The evidence shows that, according to the testimony of the plaintiff and of other witnesses, the plaintiff was driving a cow to the factory grounds. Upon arriving at the crossing he stopped and looked, and as he neither saw nor heard anything, he let the cow go and it crossed the track, but when he was crossing the automobile appeared suddenly and the accident occurred, without his being able to avoid it. By reason of the contour of the land and of the vegetation the plaintiff could see only a very short distance on the side from which the automobile appeared.

The defendant introduced in evidence a statement made by the plaintiff before a notary in the hospital a short time after he was injured at the instance of an agent of the defendant company. It was stated therein that the accident occurred because of the plaintiff's attempt to save the cow that he was driving. The plaintiff presented expert and lay testimony tending to show that his condition did not permit him to make a true declaration on account of the blow received on his head and the anaesthetic administered to him for the amputation of his arm, and that he answered all questions in the affirmative.

We think the court acted correctly in refusing to credit the evidence of the defendant. That of the plaintiff being credited, it follows that he exercised all possible diligence. The accident was due solely and exclusively to the negligence of the defendant.

Nor is there any merit in the eighth and last assignment, which is a summary of all the others. The evidence is convincing. The damages claimed from the first were moderate and are explained in detail in the complaint. A judgment could and should have been rendered, as it was, granting all that was prayed for, which is not usual in this class of cases. The suit was exhaustive and in their briefs both parties have presented their respective cases fully and ear-

nestly. In our opinion the only just decision that follows is to affirm the judgment.

*Affirmed.*

Justices Hutchison and Franco Soto concurred.
Justices Wolf and Aldrey dissented.